**Stuart B. Wolfe (SBN 156471)**
**Brian H. Gunn (SBN 192594)**
**WOLFE & WYMAN LLP**
**2033 N. Main Street, Suite 440**
**Walnut Creek, California 94596-3581**
**Telephone: (925) 280-0004**
**Facsimile: (925) 280-0005**

Attorneys for Defendants **TOM CHICOINE, HOME123 CORPORATION, NEW CENTURY MORTGAGE CORPORATION, NEW CENTURY MORTGAGE CORPORATION, and NEW CENTURY MORTGAGE CORPORATION dba HOME 123**

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

LESLIE BARNES MARKS, in pro per,

Plaintiff,

vs.

TOM CHICOINE, an individual, HOME123 CORPORATION; and NEW CENTURY MORTGAGE CORPORATION, and NEW CENTURY MORTGAGE CORPORATION dba HOME 123, and DOES 1–100,

Defendants.

**Case No. C 06-06806 SI**

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

**[Fed. Rules of Civil Proc. § 12(b)(6)]**

**Date:** **January 12, 2007**
**Time:** **9:00 a.m.**
**Place:** **Courtroom 10, 19th Floor**

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

**TO PLAINTIFF:**

**PLEASE TAKE NOTICE** that on January 12, 2007 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 10 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Tom Chicoine, Home123 Corporation, New Century Mortgage Corporation, and New Century Mortgage Corporation dba Home 123 (collectively "Defendants") will and hereby do move this court for an order under FRCP 12(b)(6) dismissing the complaint of Plaintiff Leslie Barnes Marks ("Marks"). Defendants make this motion on the grounds that Marks has failed to state a claim upon which relief can be granted.

///



WOLF€ & WYMAN LLP
Attorneys & Counselors At Law

WOLFE & WYMAN LLP
Attorneys & Counselors At Law

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND PROCEDURAL HISTORY

Marks filed her original complaint, bearing case number RG06276972, in the Alameda County Superior Court on June 28, 2006. The complaint named "Tom Chicoine and Home123 Corporation dba New Century Mortgage and Does 1 through 100." The complaint contained the following causes of action: (1) Intentional Fraudulent Misrepresentation and Negligence; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Mortgage Loan Fraud; and (4) Violation of the City of Oakland Predatory Lending Laws. In her complaint, Marks essentially alleged that Chicoine induced her to refinance her home loan by promising, among other things, to lower her interest rate from 9.0 to 8.2 percent, pay off her Mercedes SUV and provide her with "a bit more cash to work with to pay the mortgage." (Complaint, pg. 2, ll. 29-30, and pg. 3, ll. 1-7.) Marks alleged that she did not receive the loan Chicoine promised her. (Complaint, pg. 3, ll. 21-24.) Marks admitted, however, that she signed the loan papers. (Complaint, pg. 3, ll. 24-25.)

Home123 Corporation filed its demurrer to the complaint on August 23, 2006. The hearing on the demurrer was to occur on October 10, 2006. However, on October 6, 2006, the parties stipulated to the filing of Marks' First Amended Complaint ("FAC") and the removal of the action to Federal court.

On October 30, 2006, Marks filed her FAC. The FAC names "Tom Chicoine, an individual, Home123 Corporation; and New Century Mortgage Corporation, and New Century Mortgage Corporation dba Home 123, and Does 1 through 100" and contains the following causes of action: (1) Intentional Fraudulent Misrepresentation and Negligence; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Unfair Business Practices; (4) Violation of the Truth in Lending Act (TILA); and (5) Violation of the Home Ownership and Equity Protection Act of 1994 ("HOEPA").

Defendants filed their Notice of Removal and all related papers on November 1, 2006.

## 2. LEGAL STANDARD

On a motion to dismiss under Federal Rule 12(b)(6), a claim may be dismissed as a matter of law for one of the following two reasons: "(1) lack of a cognizeable legal theory or (2)

insufficient facts under a cognizeable legal theory." Robertson v. Dean Witter Reynolds, Co., 749 F.2d 530, 534 (9th Cir. 1984). Dismissal is proper if a complaint is vague, conclusory, and fails to set forth material facts in support of its allegations. See Northstar International v. Arizona Corp. Commission, 720 F.2d 578, 583 (9th Cir. 1983). Plaintiffs bear the burden of pleading facts sufficient to state a claim; courts will not supply a central element of a claim that a plaintiff did not plead. See Richards v. Harper, 864 F.2d 85, 88 (9th Cir. 1988). Courts also are free to reject all "unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast as factual allegations." Sony Pictures Entm't., Inc. v. Fireworks Entm't. Group, Inc., 156 F.Supp.2d 1148, 1153 (C.D. Cal. 2001) (citations omitted); Western Mining Counsel v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) (courts need not accept as true mere legal conclusions, even if cast in the form of factual allegations).

WOLF€ & WYMAN LLP
Attorneys & Counselors At Law

3. **LEGAL ARGUMENT**

**A. The First Cause of Action (Intentional Fraudulent Misrepresentation)**

In California, "a cause of action for fraud requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1201 (9th Cir.2001).

Federal Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.Proc. 9(b). In fraud case involving multiple defendants, the complaint must inform each defendant of his or her alleged role in the deception. Kolbeck v. LIT America, Inc., 923 F.Supp. 557, 569 (S.D.N.Y.1996). "Broad allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)." Id.

To satisfy Rule 9(b)'s rigorous pleading standard, the "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). For example, as to the date of any alleged

representation, general allegations such as "during the course of discussions in 1986 and 1987," and "in or abut May through December 1987," do not satisfy Rule 9(b). U.S. Concord, Inc v. Harris Graphics Corp, 757 F.Supp. 1053, 1057 (N.D. Cal. 1991). Plaintiffs also must plead the content of the alleged misrepresentations, who made the purported statements, why they were false, and the specific facts showing the defendant's knowledge of material falsity. See In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (*en banc*).

Plaintiffs also must set forth an explanation "as to why the disputed statement was untrue or misleading *when made*." In re GlenFed, 42 F.3d at 1549 (italics in original). Under this standard, plaintiffs may not simply point to a past statement, note that it happens to conflict with the current state of affairs, and then conclude that the statement must therefore have been false when made. Id. at 1548 ("simply because the alleged misrepresentation conflicts with the current state of facts" does not support an inference that it was false when made). Rather, the Ninth Circuit requires plaintiffs to show that a statement was false when made by, among other things, "pointing to inconsistent contemporaneous statements," or citing subsequent inconsistent statements of the defendant such as "I knew it all along." Id. at 1549 n.9.

Although it is not clear, Marks appears to base her cause of action for intentional fraudulent misrepresentation on the allegation that "Chicoine and Home123, with the approval of New Century Mortgage, jointly and severally, misrepresented the value of the property, misrepresented the interest rate, [and] misrepresented the payment of the SUV." (FAC, pg. 11, ll. 20-22.)

This allegation does not satisfy the requirements of Rule 9(b) in several respects. First, Marks does not specify which misrepresentations each of the Defendants made and does not attribute any misrepresentations to New Century Mortgage. Marks apparently included New Century Mortgage as a defendant to her first cause of action only because New Century Mortgage allegedly approved of the misrepresentations of Chicoine and Home123. Defendants are aware of no legal authority for the proposition that a party can face liability for merely approving of a misrepresentation. Under Kolbeck, *supra*, such an allegation appears to be insufficient. Kolbeck, 923 F.Supp. at 569.



WOLFE & WYMAN LLP
Attorneys & Counselors At Law

Second, Marks does not allege exactly when Defendants made each of the purported misrepresentations.

Third, Marks does not allege that the misrepresentations were false when Defendants made them. With respect to the representations regarding the value of the subject property, Marks alleges that at some unspecified time Chicoine represented that the property was worth $655,000.00 but that the loan documents stated that the property was worth $555,000.00. (FAC, pg. 11, ll. 23-26.) This allegation does not establish or give rise to a reasonable inference that Chicoine knowingly misrepresented the value of the property at the time he allegedly stated it was worth $555,000.00. With respect to representations regarding Marks' interest rate, Marks does not allege as required that at the time Chicoine quoted Marks a rate of 8.2% he did not believe based on the information Marks had provided her that he could obtain a loan for Marks at that rate.

Fourth, Marks does not allege that she justifiably relied on the purported misrepresentation regarding the value of her property, her interest rate and what her lender would and would not be paying off. To the contrary, it is clear from the face of the FAC that Marks reviewed the loan documents prior to signing them and chose to sign them notwithstanding the fact that the documents disclosed that her interest rate would be 8.62% rather than 8.2%, that her property was worth only $550,000.00 and that her lender would not be paying off her Mercedes (FAC, pg. 8, ll. 2 and 12-14; and pg. 11, ll. 24-25.)

Fifth, Marks does not allege what damage she suffered as a result of her reliance on the purported misrepresentations.

**B. <u>The First Cause of Action (Negligence)</u>**

Marks does not allege any negligent conduct on the part of the Defendants. However, even if Marks had alleged negligent conduct on the part of Defendants, her cause of action would fail because a financial institution generally owes no legal duty of care to its borrowers in conjunction with the processing of a loan when the financial institution's involvement in a loan transaction does not exceed the scope of its conventional role as a mere lender of money. <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u> 231 Cal.App.3d 1089, 1096 (1991). <u>See</u> <u>Peterson Dev. Co. v. Torrey Pines Bank</u> 233 Cal.App.3d 103, 116-19 (1991) (holding that the relationship between lender and



WOLFE & WYMAN LLP
Attorneys & Counselors At Law

borrower was a typical arm's length transaction under which a bank owed no duty to the borrower). See also Kruse v. Bank of Am. 202 Cal.App.3d 38, 67 (1988) (holding that a commercial lender is entitled to pursue it own economic interests in a loan transaction). If plaintiffs cannot allege the existence of a duty of care then sustaining a dismissal to a negligence claim is proper. See Beauchamp v. Los Gatos Golf Course 273 Cal.App.2d 20, 32 (1969) (holding that the existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence).

In Nymark, the court held that a lender owed the customer/borrower no duty in connection with the lender's internal in-house handling of a loan, including the commissioning of an appraisal done for the lender's own benefit. Nymark at 1096. The plaintiff in Nymark arranged for the financing of a parcel of real property through his lender, but subsequently discovered that the property was in need of costly repairs which the lender's appraisal apparently did not reveal. Accordingly, the plaintiff sued his lender alleging negligence in the lender's appraising of the property used as security for the loan. Id. at 1093.

The Nymark court held that notwithstanding the fact that the lender commissioned an apparently defective appraisal and funded a loan in reliance upon it, the lender owed no duty to its borrower to determine if the borrower's collateral was adequate security for the loan. Id. at 1096. The court specifically noted that as a general rule, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Id. citing Wagner v. Benson, 101 Cal.App.3d 27, 34-35 (1980). The success of the borrower's investment is not a benefit of the loan agreement which the lender is under a duty to protect. Wagner at 33. The liability to a borrower for negligence may arise only when the lender "actively participates in the financial enterprise beyond the domain of the usual money lender." Id. at 35, quoting Connor v. Great Western Sav. & Loan Ass'n 69 Cal.2d 850, 864 (1968); see also Resolution Trust Corp. v. BVS Dev., Inc. 42 F.3d 1206, 1214 (9th Cir. 1994).

Further, the Nymark court held that the lender's commissioning of an appraisal of the real property was in the usual course and scope of its loan processing procedures and was designed to

protect its own interest by satisfying it that the property provided adequate security for the loan. Such activity constituted "normal supervision of the enterprise by the lender" and was not "active participation," such that no duty of care was owed to plaintiff. Nymark at 1097. See also Wagner at 35 (holding that extensive control in the enterprise and shared profits are two factors which can support a finding that a lender has actively participated in the borrower's business).

In the instant case, Marks does not allege that Defendants had extensive control over the subject property in the FAC or in any financial enterprise involving the Plaintiff beyond "normal supervision" of the subject loan.

### C. The Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing (Tort Claim)

As set forth above, the relationship between a lender and borrower is that of creditor and debtor. Peterson Dev. Co., *supra*, 233 Cal.App.3d at 116-19. As a result, there is no special or fiduciary relationship between a lender and its borrower that would justify imposition of liability in tort for a lender's breach of the implied covenant of good faith and fair dealing. Price v. Wells Fargo Bank 213 Cal.App.3d 465 (1989). The second cause therefore fails as a tort claim.

### D. The Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing (Breach of Contract)

Admittedly, every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract "such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Waller v. Truck Ins. Exchange, Inc. 11 Cal.4th 1, 36, (1995). The California Supreme Court has clarified, however, that an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract. Carma Developers (Cal.), Inc. v. Marathon Development California, Inc. 2 Cal.4th 342, 374 (1992). The Supreme Court wrote in Carma as follows:

> It is universally recognized that the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. . . . We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. . . . On the contrary, as a general matter, implied terms should never be read to vary express terms. Id., internal citations omitted.



WOLFE & WYMAN LLP
Attorneys & Counselors At Law

In support of her cause of action, Marks alleges that Defendants breached the covenant of good faith and fair dealing because Chicoine padded her income, the subject loan left less than ten percent (10%) equity in the subject property, and Chicoine instructed his staff to ignore her calls during the three day recession period (FAC, pg. 12, ll. 20-27 and pg. 13, ll. 1-3.) Marks does not allege how any of the Defendants did anything to deprive her of the benefits of the loan agreement the parties actually entered. Nothing in the FAC indicates that Marks got a loan other than the loan she agreed to in writing.

Further, Marks does not allege that the loan agreement contained a three day recession period much less that she followed all steps required to rescind the loan. Marks alleges that Chicoine resisted her efforts to orally rescind the loan. However, Marks does not allege that the loan agreement contained a provision that allowed her to rescind it, much less a provision that allowed her to rescind the loan agreement orally. Under Regulation Z, the regulations that implement the Truth in Lending Act ("TILA") (15 U.S.C.A. § 1601), certain loan agreements are subject to a three day right of rescission, but the only way to effectively rescind these loans is in writing. 12 C.F.R. § 223.23. The regulation provides as follows:

> To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business. Id.

Even if the loan agreement was subject to this provision, something Marks does not allege, Defendants were under no obligation to act on Mark's alleged oral notice of rescission.

**E. THIRD CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES**

California Business and Professions Code section 17200 ("UCL") allows recovery for "any unlawful, unfair or fraudulent business act or practice...." An action based on this state statute "borrows" violations of other laws when committed pursuant to business activity. Farmers Ins. Exchange v. Superior Court 2 Cal.4th 377, 383 (1992). To make a claim under the UCL, plaintiffs must allege that a defendant engaged in an "unlawful, unfair or fraudulent business act or practice [or] unfair, deceptive untrue or misleading advertising [or] any act prohibited by Chapter 1

///

(commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." B & P Code § 17200.

There are two lines of appellate opinions addressing the definition of "unfair" within the meaning of the UCL in consumer actions. One line defines "unfair" as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. Bardin v. DaimlerChrysler Corp. 136 Cal.App.4th 1255, 1260 (2006). The other line of cases holds that the public policy which is a predicate to a UCL action under the "unfair" prong of the UCL "must be tethered to specific constitutional, statutory, or regulatory provisions." Id. at 1261.

Regardless of which test applies, Marks has failed to allege a claim under the UCL against any of the Defendants. Marks alleges in support of her claim that "Defendant Chicoine SHOULD have not based Plaintiff's new mortgage on the salary Plaintiff WOULD be making, Defendant should have based the mortgage on her current income." (FAC, pg. 3, ll. 15-17.) TILA admittedly prohibits lenders from engaging in a "pattern or practice" of making certain types of loans, defined as "high-rate loans," without regard to a borrower's ability to repay the loan. 15 U.S.C.A. § 1639(h). However, Marks has not alleged any facts which establish or give rise to a reasonable inference of a "pattern or practice" on the part of any of the Defendants. More fundamentally, Marks has not alleged that the subject loan was a "high-rate loan" under TILA. See 15 U.S.C.A § 1602(aa). Even if the subject loan was a high-rate loan, Regulation Z specifically permits a lender to consider a borrower's expected income when assessing a borrower's ability to repay a loan. 12 C.F.R. § 226.34(a)(4) and Comments 34(a)(1)-(4). Comment 34(a)(1) provides as follows:

> Any expected income can be considered by the creditor, except equity income that would be realized by collateral. For example, a creditor may use information about income other than regular salary or wages such as gifts, expected retirement payments, or income from self employment, such as housecleaning or childcare.

///

///

It therefore could not have been immoral or a violation of law for the Defendants to consider Marks' expected income from either her new job or work as a notary when assessing Marks' ability to repay the subject loan.

Also, it is clear from the face of the FAC that none of the Defendants did anything immoral or unethical because Marks received the loan she agreed to in writing. (FAC, pg. 7, l. 10.) Further, she received a cash disbursement and lowered her interest rate. (FAC, pg. 7, l. 2 and pg. 9, l. 12.)

### F. FOURTH CAUSE OF ACTION FOR VIOLATION OF THE TRUTH IN LENDING ACT

The fourth cause of action is entitled "Violation of the Truth In Lending ACT (TILA)" but Marks also appears to base her cause of action on purported violations of the Federal Trade Commission Act ("FTC Act") and the Home Ownership and Equity Protection Act of 1994 ("HOEPA"). (FAC, pg. 14, ll. 9-18.) Marks does not specifically allege under the fourth cause of action any violations of these laws. However, she does refer to paragraphs 1 thru 44, which precede the fourth cause of action, as support for it. (FAC, pg. 14, l. 17.) The problem is that, with only one exception, it is not clear from paragraphs 1 through 44 what actions purportedly constitute violations of TILA, the FTC Act or HOEPA.

The one purported HOEPA violation Marks does specifically allege in these paragraphs is as follows: "Chicoine claimed the Property was appraised at $655,000. On the loan documents, the value was stated at $555,000, effectively depleting the equity from the property, in clear violation of HOEPA." (FAC, pg. 11, ll. 23-26.) The first problem with this allegation is that HOEPA applies only to high-risk loans as defined in 15 U.S.C.A § 1602(aa) and the FAC contains no factual allegations which establish or give rise to a reasonable inference that the subject loan meets this definition. In re Luciano, Slip Copy, 2006 WL 2471948 (9th Cir. 2006). The second problem is that the allegation does not constitute a violation of HOEPA. See 15 U.S.C.A. § 1639. With respect to high-risk loans, HOEPA requires certain additional disclosures over and above those disclosures TILA requires. 15 U.S.C.A. § 1639(a)(1) &(2). HOEPA also prohibits certain

///



WOLFE & WYMAN LLP
Attorneys & Counselors At Law

terms in high-risk loans. 15 U.S.C.A. § 1639(c) – (g). HOPEA does not, however, mandate that a refinance loan leave a certain amount of equity in a home as Mark implies.

### G. FIFTH CAUSE OF ACTION FOR VIOLATION OF THE TRUTH IN LENDING ACT

In support of her fifth cause of action, Marks sets forth the definition of a high-risk loan subject to the provisions of HOEPA. (FAC, pg. 15, ll. 8-22.) She does not, however, allege any facts that establish or give rise to a reasonable inference that the subject loan was, in fact, a high-risk loan. The purported HOEPA violations Marks alleges in her fifth cause of action therefore cannot give rise to a valid claim.

## 4. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion to dismiss.

DATED: November _7_, 2006

WOLFE & WYMAN LLP

By: /S/ Brian H. Gunn
STUART B. WOLFE
BRIAN H. GUNN
Attorneys for Defendants **TOM CHICOINE, HOME123 CORPORATION, NEW CENTURY MORTGAGE CORPORATION, NEW CENTURY MORTGAGE CORPORATION, and NEW CENTURY MORTGAGE CORPORATION dba HOME 123**

WOLFE & WYMAN LLP
Attorneys & Counselors At Law