Leslie Barnes Marks, In Pro Per
3099 Suter Street
Oakland, CA 94602
Tel: 510/434-9748
Email: blaqrubi@yahoo.com

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

Leslie Barnes Marks, in pro per,

             Plaintiff,

   vs.

Tom Chicoine, an individual, Home123
Corporation; and New Century Mortgage
Corporation, and New Century Mortgage
Corporation dba Home 123, and DOES 1 -
100,

             Defendants

Case No.: RG 06276972

FIRST AMENDED COMPLAINT
ALLEDGING INTENTIONAL
FRAUDULENT MISREPRESENTATION
AND NEGLIGENCE; BREACH OF THE
IMPLIED COVENANT OF GOOD FAITH
AND FAIR DEALING; UNFAIR
BUSINESS PRACTICES; VIOLATION OF
THE TRUTH IN LENDING ACT (TILA)
AND HOME OWNERSHIP AND EQUITY
PROTECTION ACT OF 1994 (HOEPA)
AND APPORTIONMENT OF FAULT

Plaintiff, Leslie Barnes Marks alleges as follows:

### INTRODUCTION

1.    Plaintiff, LESLIE BARNES MARKS, (hereafter "Marks" and/or "Plaintiff") is and at all times relevant herein was, an individual and resident of the City of Oakland, California, County of Alameda. Marks is, and at all timed relevant herein was, the owner of, and resided in, the single family residence located at 3099 Suter Street, Oakland, California her primary residence (the "Marks Property" or "the Property). Ms. Marks resided in the home for approximately eight (8) years. The complete legal description of the Marks Property is attached hereto as Exhibit "A" and is incorporated herein by this reference.

2.    Home 123 as applied herein refers to the Home 123, Emeryville, California location, managed by Defendant, Tom Chicoine and all its agents, subsidiaries, heirs and representatives of Home 123 Corporation. (Hereinafter referred to as "Home 123".)

**FIRST AMENDED COMPLAINT - 1**

3.      Tom Chicoine as referred to herein refers to Defendant Mr. Chicoine as the Broker for Defendant Home 123, Home 123 Corporation and all its agents, subsidiaries, heirs and representatives. (Hereinafter referred to as "Chicoine".)

4.      New Century Mortgage Corporation as referred to herein refers to Defendant New Century Mortgage Corporation, and all its agents, representatives, heirs and subsidiaries and specifically as the current holder and/or financer of Plaintiff's Mortgage. (Hereinafter referred to as "New Century".)

5.      Defendants as referred to herein refers to all Defendants jointly and/or severally and/or their representatives, heirs, assigns and/or agents..

6.      New Century Mortgage Loan Number 1006788513 (1219-025) refers to the Loan which is the subject matter of this litigation.   Hereinafter "the Loan or the Mortgage."

## GENERAL ALLEGATIONS

7.      It is worth noting that Defendants claim Home 123 Corporation, NOT New Century Mortgage is the holder of Plaintiff's Mortgage.  Plaintiff presents Exhibit "B" a copy of Plaintiff's Mortgage statements and payment voucher.

8.      Marks is informed and believes and based thereon alleges that Defendants Tom Chicoine, Home123 Corporation and New Century Mortgage Corporation dba Home 123 (hereafter, the "Defendants", or, together with DOES 1 - 100, "Defendants") are jointly and severally are responsible for allowing/enabling/supporting Mr. Chicoine – Mr. Chicoine acting as the broker for Home 123 and agent for New Century Mortgage  - to defraud Plaintiff of the Property by falsifying documents to qualify Plaintiff for the Loan.  Defendants accomplished this by falsifying stated loan documents, without regard for Marls' plaintiffs denying Plaintiff her right to (1.) cancel the Loan which Plaintiff requested during the required period, and additionally on several different occasions, resulting in Plaintiff being unjustly qualified for a Mortgage that Plaintiff could clearly not afford – violating her right to rescission during the three day period; (2)

**FIRST AMENDED COMPLAINT - 2**

to qualify Plaintiff for a Mortgage Payment that she could not afford, without regard for her ability to make payments on the Loan, or the Mortgage Payment. Clear violations of The Truth in Lending Act, hereinafter, "TILA".

9.    In approximately February of 2006, Plaintiff contacted Home123.com and spoke with a Home 123, employee named Meosha Bazemore.   Plaintiff advised Ms. Bazemore that Plaintiff desired to refinance the Property simply for a lower interest rate which would reduce her Mortgage Payment.  Plaintiff took a professional liking to Ms. Bazemore as she was very nice, professional and did everything in her power to secure a refinance package for Plaintiff.  However, Ms. Bazemore advised Plaintiff that she was NOT a broker.  Ms. Bazemore further advised Plaintiff that she was in the business of helping homeowners secure loans and NOT defrauding them or taking advantage of them.  For this reason, for several of Plaintiff's questions, Ms. Bazemore had to refer to Defendant Chicoine to respond to Plaintiff's questions about refinancing and mortgages. Ms. Bazemore advised Plaintiff that it did not seem promising that Ms. Bazemore could secure a loan for Plaintiff.  Ms. Bazemore needed to further consult the services of her manager, Tom Chicoine, who WAS also a Broker.

10.    Plaintiff then advised Ms. Bazemore that her home was recently appraised at close to $600,000.  Plaintiff advised Ms. Bazemore that Plaintiff had been solicited by an agency about job opportunities that would pay approximately $12,000 annually more than Plaintiff was currently earning.  Plaintiff was NOT currently seeking new employment.  Plaintiff explained that if she could get her Mercedes SUV paid off, take no cash out of the refinance and reduce her interest rate; she could maintain her property comfortably.  Ms. Bazemore stated that she would have to consult her manager, Defendant Chicoine for advice on that new information.

11.    For a period of approximately 10 (ten) days, Ms. Bazemore, who was generally available to speak with Plaintiff, was suddenly "unavailable".  Plaintiff had

**FIRST AMENDED COMPLAINT - 3**

been told/advised by other employees of Home 123 that Ms. Bazemore: 1. "had a flat tire on the freeway; 2. "had a family emergency"; 3. was "out to lunch" and 4. "called in sick" and several other unprofessional excuses why Ms. Bazemore could not return Plaintiff's telephone calls. Excuses which seemed totally out of character for Ms. Bazemore, who appeared to go out of her way to explain the mortgage and refinance process to Plaintiff.

12.    Plaintiff never spoke to Ms. Bazemore again. Plaintiff began receiving calls from Defendant Chicoine, calls to which, Plaintiff initially did not respond to.

13.    Defendant Chicoine left numerous messages on Plaintiff's home phone and cell phone. Defendant Chicoine even came out to the Property and left his business card in the door of the Property, on two separate occasions. Plaintiff finally called Mr. Chicoine and expressed that Plaintiff only wanted to do business with Meosha Bazemore. Mr. Chicoine advised Plaintiff that Ms. Bazemore left his firm for another position. Mr. Chicoine later advised Plaintiff that Ms. Bazemore was "unprofessional" and with all her problems arriving to work, he had to let her go. Plaintiff was shocked and felt that this was amazing.

14.    Plaintiff is now informed and believes that Mr. Chicoine terminated Ms. Bazemore's employment. Mr. Chicoine then initiated his plan, with the approval of his employer Home 123 and/or the finance company New Century Mortgage to defraud Plaintiff of the Property by qualifying her for the Loan Plaintiff could not afford. A Loan that Plaintiff's current income clearly did not support. Defendants completely disregarded these points in clear violation of TILA and HOEPA. If allowed to prevail in this litigation Defendants and each of them, will successfully and continue to disregard TILA and HOEPA and violate the law.

15.    Defendants, by illegally and fraudulently placing Plaintiff in this Mortgage depleted the equity in the Property. Further violations of TILA, HOEPA and RESPA.

**FIRST AMENDED COMPLAINT - 4**

Defendants accomplished this by allowing Defendant Chicoine to falsify documents to "qualify" Plaintiff for the Loan.

16. After Defendant Chicoine's repeated telephone calls and visits to the Property, Plaintiff spoke with Tom Chicoine of Home123.com about refinancing the Property. Plaintiff clearly reiterated exactly what was expressed to Ms. Bazemore that Plaintiff simply wanted a lower interest rate. Plaintiff did not want to take out cash. Plaintiff's main concern was a lower, more comfortable monthly loan payment. Mr. Chicoine admitted to discussing Plaintiff's questions and concerns with Ms. Bazemore prior to her departure. Mr. Chicoine claimed that he had successfully completed "hundreds" of these loans and that Ms. Bazemore (unbeknownst to him) lacked the knowledge and experience to service Plaintiff in the manner in which was required.

17. Defendant Chicoine seemed friendly and conversations between Plaintiff and Chicoine often went off the topic of refinancing. For example, Chicoine told Plaintiff that he was ranked No. 125 in the world as a tennis player and recently was moved up to number 25, or some similar ranking. Plaintiff told Chicoine that her 11 year old recently began having seizures. Plaintiff was under tremendous stress, due to Plaintiff's son's upcoming surgery. Plaintiff advised Chicoine that she had been a legal secretary for 25 years. Plaintiff also advised Chicoine that she was trying her hand at stand-up comedy. Plaintiff also advised Chicoine that she was a notary and was taking the loan signing agent course. Plaintiff advised Chicoine that she was not certain where her son's mysterious illness would take her. While there was a possibility of a new employment offer, Plaintiff was preparing to have other options since, the source of her son's illness could not be determined and most attorney employers frowned on numerous absences regardless of the cause. Plaintiff sadly realizes now that these conversations were to gain Plaintiff's "confidence." Similar to a "con man", Defendant Chicoine successfully gained Plaintiff's trust and confidence. Plaintiff truly felt

**FIRST AMENDED COMPLAINT - 5**

1   Defendant Chicoine was working to successfully refinance the Property at a lower more

2   comfortable rate.

3        18.    Returning to the subject of the refinance, Defendant Chicoine advised

4   Plaintiff that he could only reduce the mortgage from 9.0 to an 8.2 interest rate.  Mr.

5   Chicoine stated that that would not lower my mortgage payment by much, but he could

6   definitely lower the interest rate and the payments.  Emphasis being LOWER monthly

7   payments.  Mr. Chicoine would pay off Plaintiff's Mercedes SUV and Plaintiff would

8   have a bit more cash to work with to successfully pay the new lower mortgage.  Mr.

9   Chicoine acknowledged that if Plaintiff was successful in getting the new job that would

10  also make the new LOWER payment more comfortable.  Mr. Chicoine also said his

11  Home 123 would provide Plaintiff with clients as a Loan Signing Agent.  Plaintiff advised

12  him that she could sign loan documents as a Notary, but she wanted her certification.

13  Defendant Chicoine, prior to the loan closing, requested Plaintiff keep her Notary

14  supplies with her as Chicoine had a client for Plaintiff to sign in San Francisco.

15  However this client was in the hospital and Chicoine wanted Plaintiff ready to go when

16  he called.  Plaintiff now believes even this was simply a rouse to keep Plaintiff from

17  paying attention to the details of the Loan, interest payments and terms and conditions.

18  Chicoine's deceptive methods included telling Plaintiff that even five (5) loan signings a

19  month would be an extra $1,000 worth of income – at each signing paying $200.  This is

20  how Chicoine gained Plaintiff's "confidence" to take his word as given.  To date,

21  Defendants have not provided Plaintiff with a single notary assignment of any kind.

22        19.    Mr. Chicoine began calling Plaintiff and changing the rate during the

23  discussions.  Plaintiff advised Chicoine that Plaintiff WOULD NOT DO THE LOAN if the

24  rate was more than the agreed upon 8.2%.  Mr. Chicoine then would call and tell

25  Plaintiff the rate was 8.24% then Mr. Chicoine would say 8.42%.  When Plaintiff

26  questioned Mr. Chicoine about these "verbal changes", Mr. Chicoine would and did

27

**FIRST AMENDED COMPLAINT - 6**

confirm the rate of Plaintiff's loan as "8.2%. Mr. Chicoine then stated that he was quoting the rate of another client. The final loan interest rate was 8.62% which Plaintiff did NOT agree to. Plaintiff was clear, insistent and reiterated that she would NOT do a Loan for an interest payment of more than the agreed upon 8.2%

20.    Plaintiff received no documents to sign three (3) days prior to signing the loan documents.

21.    When the Notary arrived to Plaintiff's house with the loan documents, and the rate was not changed from 8.62, Plaintiff called Chicoine and did not receive an answer. The notary advised Plaintiff that she had three days, in this case four, because of the weekend to rescind the loan. Plaintiff signed the papers and again called Chicoine on his personal cell phone, leaving a voicemail message.

22.    When the Notary arrived to Plaintiff's home for the loan signing, Plaintiff noticed the figures were pretty close to what Mr. Chicoine claimed but Plaintiff did not see the impound account information and Plaintiff did not see where they were paying off the Mercedes SUV as promised. The documented interest rate was in excess of 8.6% - all things Plaintiff did not agree to. Plaintiff advised Chicoine several times that if the rate was NOT 8.2% there was no deal, the Loan was cancelled. Plaintiff called Chicoine on his personal cell phone, the next day, a Saturday, to inform him that the Loan was CANCELLED. Only then did Defendant Chicoine return Plaintiff's call. Chicoine became bit excited or agitated and claimed we would have all the bugs worked out by Monday. Chicoine claimed and seemed agitated that we would have to redo the loan documents from scratch if Plaintiff cancelled, and it was quite possible nothing could be done for her. Plaintiff again reiterated that that she would NOT do the loan for more than the agreed upon 8.2%. Mr. Chicoine agreed that his secretary must have made a typo on the documents and assured Plaintiff not to worry. Needless to say, Plaintiff could not get in touch with Chicoine before the expiration date. The next time Chicoine contacted Plaintiff, when Plaintiff called on the last day of rescission, Chicoine said they could provide Plaintiff with an additional $10,000 in cash. Chicoine informed

**FIRST AMENDED COMPLAINT - 7**

Plaintiff there was an additional $2,000, as well.  Again, Plaintiff verbally confirmed with Mr. Chicoine that Mr. Chicoine could get this money AND payoff the Mercedes SUV, leave $100,000 equity in Plaintiff's property and Plaintiff would have an impound account AND most importantly the loan rate was 8.2%.  Mr. Chicoine verbally confirmed "YES" to all the above. During that conversation, after Plaintiff left a message that she was rescinding the loan, Saturday, Mr. Chicoine returned Plaintiff's call stating that the loan was hard to get, that he had to pull strings and that he would make things right by Monday, and fax Plaintiff new documents by the following Monday.

23.     The next business day, Plaintiff again called Chicoine leaving a message that she would NOT accept the Loan and rescinded the Loan signing, if he did not provide the papers reflecting the changes that were discussed.  To date Plaintiff received no additional Loan documents, revised Loan documents or documents of any kind.

24.     Plaintiff called Chicoine on Monday and Tuesday.  Receiving no response. Plaintiff then advised the person who answered the phone that the Loan was CANCELLED.  Plaintiff advised this person that the last day to cancel was Wednesday and that since Chicoine had not forwarded documents, the Loan was CANCELLED.

25.     Plaintiff then received a call from Chicoine on Wednesday that he "found a way to give you $10,000" in this refinance.  Plaintiff again immediately requested confirmation: "You can give me $10,000 AND pay off the SUV and I will STILL have $100,000 equity in my home?"  Chicoine replied "Yes. All is as we agreed." Plaintiff advised Chicoine that she has ALWAYS in every loan had an impound account. Plaintiff also requested Chicago Title Company as the escrow agent.  Initially, Mr. Chicoine said he would use Chicago Title.  When Plaintiff called her contact at Chicago Title Insurance Company and was advised there was no escrow account established. Plaintiff again called Chicoine who advised Plaintiff that he uses American Title Company.  Plaintiff is informed and believes his or one of his female acquaintances works there.  She advised me she is *very good" (emphasis added) friends with

**FIRST AMENDED COMPLAINT - 8**

Chicoine.  Plaintiff attempted to verify her name, which Plaintiff believes her first name is "Susan", however, when Plaintiff called to inquire about this person, her accounts were "taken over" by a manager.

26.    Plaintiff was then advised by Chicoine that her Mortgage company was New Century Mortgage Corporation.  Plaintiff was further surprised that the financing institution was New Century Mortgage.  Plaintiff had contacted them directly prior to contacting Home123.com, and Plaintiff was turned down for a loan via online application by New Century.  Plaintiff mentioned this fact to Chicoine, who claimed New Century was his parent company and he did not know why Plaintiff was turned down.  Plaintiff did not know New Century and Home 123 they were affiliated during this time, or were the same company.  Plaintiff informed Chicoine that she had refinanced with New Century prior to this time.

27.    Plaintiff then received the proceeds of the loan in her bank account and called Chicoine to find out about the loan documents.  Plaintiff never received the revised documents from Defendant Chicoine.  Chicoine never returned a telephone call from Plaintiff for ANY reason after the Loan closed.  He did not respond to email, cell phone, and work phone. Nothing.  To day, Plaintiff has not spoken to Chicoine once.

28.    Plaintiff was shocked and angered when she received her first invoice from New Century Mortgage Company, charging monthly payment was $4,054.16, approximately $700 MORE per month than the original loan.  Plaintiff, constantly and continually called Chicoine.  Chicoine, to date, has NOT returned a call or email since the Loan closed.

29.    Plaintiff contacted New Century who advised Plaintiff that New Century Mortgage Corporation was the parent company of Home123.com and Home123.com would have to investigate the matter.  Plaintiff also requested New Century to do an investigation, and never received a response from New Century Mortgage.  To date, Plaintiff has never heard from Chicoine again. Plaintiff received a letter from Home123.com stating that there was nothing improper about my loan documents.  A

**FIRST AMENDED COMPLAINT - 9**

copy of this letter is attached hereto as "EXHIBIT C."  Chicoine also put Plaintiff in a 40 year mortgage not the customary 30 year mortgage.  This was done without Plaintiff's knowledge or consent.  A copy of a current New Century Mortgage statement is attached hereto at Exhibit "B".

30.   Defendants, since the inception of this litigation now claim that the correct name of Home 123 is "New Century Mortgage dba Home 123".  However, Chicoine's Notice of Acknowledgement and Receipt filed with the court, but never served on Plaintiff states "Home 123 dba NCMC" (New Century Mortgage Co.).  See, Exhibit "E".

31.   Plaintiff later discovered that NO Defendant in this action was licensed by the Department of Real Estate at the time of this transaction.  See Exhibit "F".

32.   Plaintiff requested copies of the original loan documents including the documents that determined her income to qualify for the Loan from New Century Mortgage Co., who referred her to Home 123.  Plaintiff requested the same document copies of the original Loan documents and the documents that determined her qualification for the Loan from Home 123 who referred Plaintiff to the Title Company.  Plaintiff requested copies of the loan documents from the Title Company and was only provided with the disbursement papers relating to the additional $2,000 and referred Plaintiff back to Home 123 for copies of her original loan documents.  To date Plaintiff has NO copies of her original Loan documents.

### FIRST CAUSE OF ACTION
### INTENTIONAL FRAUDULENT MISREPRESENTATION AND NEGLIGENCE

33.   Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 32 of the General Allegations.

34.   Chicoine had no intention of honoring the doctrine of good faith and fair dealing from the time he terminated Meosha Bizmore.  Chicoine began his plan to defraud Plaintiff by confirming an interest rate that he had no intention of honoring.  Chicoine called Plaintiff at the firm she was employed with at the time.  Since Plaintiff had a prior loan with New Century Mortgage, New Century was ALSO aware and have

**FIRST AMENDED COMPLAINT - 10**

documentation that Plaintiff was legal secretary and what exactly Plaintiff's salary was. Plaintiff advised Chicoine that she was expecting to begin a legal secretarial job, within 30 days, as I had been looking for a job since discovering substantial earning potential and had a few potential offers thru the agency who solicited her.  Chicoine offered to give Plaintiff additional income as a Certified Loan Signing Agent because HE KNEW Plaintiff was not qualified to be approved for the fraudulent loan he was about to approve.  Plaintiff is informed and believes Chicoine as in individual or in conjunction with Home123.com and New Century Mortgage to inflate Plaintiff's income to approve Plaintiff for a mortgage of $4,053 per month.  A mortgage loan Plaintiff could NEVER qualify for, especially, since Plaintiff's Chapter 13 Bankruptcy discharged approximately two years ago.  While Plaintiff's employer stated Plaintiff's salary at $64,000, on Plaintiff's 2004 tax return Plaintiff's income was only approximately $58,000.  This information was provided Chicoine.  Defendants violate the covenant of good faith and fair dealing by approving the Loan without confirming Plaintiff's income and verifying that Plaintiff COULD afford to make the monthly payments of the Loan.

35.    Mr. Chicoine knew Plaintiff could not make a mortgage payment in excess of $4000 as well as her regular home utilities, the payment of her SUV and other necessary living expenses.  In order to qualify for a refinanced loan payment of $4,000 Plaintiff would have to earn in excess of $100,000 per year.  A mark Plaintiff has not yet met.

36.    Chicoine and Home 123, with the approval of New Century Mortgage, jointly and severally, misrepresented the value of the property, misrepresented the interest rate, misrepresented the payment of the SUV.  Plaintiff would not have agreed to the loan if she was NOT mislead by the Defendants, and each of them.  Chicoine claimed the Property was appraised at $655,000.  On the Loan documents, the value was stated at $555,000, effectively depleting the equity from the property, in clear violation of HOEPA.

**FIRST AMENDED COMPLAINT - 11**

37.     Defendants defrauded Plaintiff by confirming one rate of interest and producing another.  Defendants defrauded Plaintiff by depleting the equity from her home by misstating the value of the appraisal of her property.

38.     Defendants and each of them have a fiduciary duty, to the public to provide honest, fair reasonable home loans.  Plaintiff discovered no Defendant was a current active member of the California Department of Real Estate, see Exhibit "D".

39.     Defendant Chicoine advised Plaintiff that New Century Mortgage would be her mortgage company.  Defendants NEVER advised Plaintiff that "Home 123" would be the holder of her mortgage or refinancing her home.  Plaintiff has no documentation stating that "Home 123" is her mortgage company.  See Exhibit "B".

40.     Plaintiff was never advised that Home 123 would be assuming her Mortgage.  Based on Chicoine's behavior towards the end of the deal, Plaintiff would have objected to being financed by Home 123.

## SECOND CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

41.     Marks re-alleges and incorporates by reference the allegations of paragraphs 1 through 36 of the General Allegations and causes of action.

42.     Chicoine claimed he and Home123.com made no money on Plaintiff's refinance.  In fact, by defrauding Plaintiff, Chicoine and Home 123 received monies well in excess of $10,000.  Plaintiff could not determine the EXACT amount as she was never provided with the final Loan documents.  Chicoine attempted to "pad" Plaintiff's income by claiming that Home 123 would provide her with many "loan signing agent" jobs that paid approximately $200 each.

43.     Chicoine and Home 123 have depleted the equity in the Property leaving less that 10% of equity in the Property, after reiterating and verbal confirmation that the Property was worth $655,000 – which would leave equity of $150,000 in the property, on the loan documents Defendant Chicoine claimed the Property is worth $555,000.  Chicoine intentionally relayed an inflated value of the Property.  Chicoine deliberately

and intentionally falsified the income of Plaintiff and intentionally and deliberately instructed employees of Home 123 to ignore her calls during the 3 day rescission period and at all times thereafter.

## THIRD CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES

44.     Marks re-alleges and incorporates by reference the allegations of paragraphs 1 through 41 of the General Allegations and causes of action.

45.     There is absolutely no way that Plaintiff could qualify for a monthly payment of $4,052.00.  Plaintiff's annually income would have to be over $100,000 per year.  Mr. Chicoine was well aware that my new job would be paying me $71,000. per year.  Plaintiff WOULD have qualified for a loan at the 8.2% rate, which would have been a bit higher than what I way paying, WITH my SUV paid off WITH an impound account.  Mr. Chicoine has placed my home in jeopardy, caused undue stress, irreconcilable financial burden, irreparable credit damage, undue emotional and physical stress on myself and my family.  Plaintiff would NOT have completed a mortgage with Defendants if these facts were properly represented.

46.     Defendant Chicoine SHOULD have not based Plaintiff's new mortgage on the salary Plaintiff WOULD be making, Defendant should have based the mortgage on her current income.  Defendants should not have prepared or financed a mortgage based on the income Plaintiff was GOING to make.  Defendants should have prepared or financed a mortgage based on the income Plaintiff was making at the time of refinance.

47.     Defendants actions as alleged above constitute unfair and/or unlawful business practices under section 17200 *et seq.* of the California Business and Professions Code Section 17200.

48.     Marks has suffered, is suffering and will continue to suffer injuries and financial damages as a direct and proximate result of Defendants actions as alleged above.  Marks is entitled under the Business and Professions Code Section 17200 to

**FIRST AMENDED COMPLAINT - 13**

the equitable remedy of restitution (i.e., disgorgement) of all money, property or benefits wrongfully obtained by Defendants.

49.     Marks is entitled under Business and Profession Code Section 17200 to injunctive relief to stop the unlawful conduct by Defendants.

## FOURTH CAUSE OF ACTON

## VIOLATION OF THE TRUTH I LENDING ACT (TILA)

50.     Marks re-alleges and incorporates by reference the allegations of paragraphs 1 through 47 of the General Allegations and Causes of Action.

51.     This is an action under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), and Section 108(c) of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1607(c), to obtain preliminary and permanent injunctive relief, rescission, restitution, reformation, disgorgement, and other equitable relief against defendants for engaging in acts or practices in violation of TILA, 15 U.S.C. §§ 1601-1666j, as amended, including, but not limited to, the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), as amended, and TILA's implementing Regulation Z, 12 C.F.R. 226, as amended, and for unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as amended as described in this First Amended Complaint in Paragraphs 1 thru 44 of this First Amended Complaint.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE HOME OWNERSHIP AND EQUITY PROTECTION ACT OF 1994 ("HOEPA")

52.     Marks re-alleges and incorporates by reference the allegations of paragraphs 1 through 37 of the General Allegations and Causes of Action herein.

53.     When the first payment was due, Plaintiff was contacted at her new employers' office on or about May15th by a representative of New Century Mortgage, who advised Plaintiff that if Plaintiff did not make the first payment by the 16th of the May, the next day, that New Century Mortgage would immediately commence

**FIRST AMENDED COMPLAINT - 14**

foreclosure proceedings.  The representative explained that this procedure is applied only to the first mortgage payment, not subsequent payments.  I believe Chicoine jointly and severally with Home123 maliciously defrauds the public, homeowners and consumers into mortgages they cannot afford, then New Century forecloses on the homes.  They violate the laws of TILA and HOEPA and prey on consumers by setting them up to fail.  This "payment plan" should have been disclosed to Plaintiff prior to finalizing the loan. This was never disclosed to Plaintiff.

54.      The term "HOEPA mortgage loan" means a consumer credit transaction consummated on or after October 1, 1995, that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction or an open-end credit plan, in which: (1) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (2) the total points and fees payable by the consumer at or before loan closing will exceed the greater of 8% of the total loan amount or $400 (adjusted annually by the Board of Governors of the Federal Reserve System ("FRB") on January 1 by the annual percentage change in the Consumer Price Index that was reported on June 1 of the preceding year), which is covered by HOEPA, pursuant to Section 129 of TILA, 15 U.S.C. § 1639, and Section 226.32 of Regulation Z, 12 C.F.R. § 226.32. As used herein, the "total loan amount" is calculated as described in Section 226.32(a)(1)(ii)-1 of the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. § 226.32 (a)(1)(ii)-1, Supp. 1.  Plaintiff alleges that her mortgage loan is in clear violation of HOEPA.

55.      In the course of offering and extending credit to consumers, Defendants have failed to provide material information required to be disclosed by HOEPA and TILA, included loan terms prohibited by HOEPA, and engaged in unfair and deceptive acts or practices.  In the course and conduct of offering and making HOEPA mortgage

loans, Defendants Chicoine, Home 123 and New Century Mortgage have violated, and continue to violate, the requirements of HOEPA and Regulation Z in the following and other respects by:

(a) failing to disclose in writing the following notice three days prior to providing loan documents:

> You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan, in violation of Section 129(a)(1) of TILA, 15 U.S.C. § 1639(a)(1), and Section 226.32(c)(1) of Regulation Z, 12 C.F.R. § 226.32(c)(1);

(b) failing to disclose, or accurately disclose:

(i) the annual percentage rate, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(2) of Regulation Z, 12 C.F.R. § 226.32(c)(2);

(ii) the regular payment amount, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(3) of Regulation Z, 12 C.F.R. § 226.32(c)(3); and

(iii) specified variable rate information, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(4) of Regulation Z, 12 C.F.R. § 226.32(c)(4); and

(c) failing to furnish the disclosures described in Paragraph 20(a) and (b) above clearly and conspicuously in writing **at least three business days prior to consummation of a HOEPA mortgage loan transaction**, in violation of Section 129(b)(1) of TILA, 15 U.S.C. § 1639(b)(1), and Section 226.31(b) and (c)(1) of Regulation Z, 12 C.F.R. § 226.31(b) and (c)(1).

56. By failing to disclose, or accurately disclose, material credit information, as described in Paragraph 20 above, all defendants have engaged, and continue to

**FIRST AMENDED COMPLAINT - 16**

engage, in deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a).

57.    In the course and conduct of offering and making HOEPA mortgage loans,

Defendants have violated, and continue to violate, the requirements of HOEPA and

Regulation Z by including a prohibited "prepayment penalty" provision, in violation of

Section 129(c) of TILA, 15 U.S.C. § 1639(c), and Section 226.32(d)(6) of Regulation Z,

12 C.F.R. § 226.32(d)(6).

58.    By including prohibited loan terms in HOEPA mortgage loan transactions,

as described in Paragraph 50 above, Defendants have engaged, and continue to

engage, in unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.

§ 45(a).

59.    In the course and conduct of offering and making HOEPA mortgage loans,

Defendants have violated, and continue to violate, the requirements of HOEPA and

Regulation Z by engaging in a pattern or practice of extending such credit to a

consumer based on the consumer's collateral rather than considering the consumer's

current and expected income, current obligations, and employment status to determine

whether the consumer will be able to make the scheduled payments to repay the

obligation, in violation of Section 129(h) of TILA, 15 U.S.C. § 1639(h), and Section

226.32(e)(1) of Regulation Z, 12 C.F.R. § 226.32(e)(1).

60.    By engaging in a pattern or practice of making HOEPA mortgage loans

without regard to the payment ability of consumers, as described in Paragraph 24

above, Defendants, and each of them, jointly and severely have engaged, and continue

to engage, in unfair acts or practices in violation of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a). Defendants and each of them have directed and/or controlled acts and

practices and, therefore, have engaged, and continue to engage, in unfair acts or

practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**FIRST AMENDED COMPLAINT - 17**

61.     In the course and conduct of offering and making HOEPA mortgage loans and/or extending other consumer credit, Defendants have violated, and continue to violate, the requirements of TILA and Regulation Z in the following and other respects by:

(a) failing to make required TILA disclosures in writing before consummation of a consumer credit transaction, in violation of Sections 121(a) and 128(b)(1) of TILA, 15 U.S.C. §§ 1631(a) and 1638(b)(1), and Sections 226.17(a) and (b) and 226.18 of Regulation Z, 12 C.F.R. §§ 226.17(a) and (b) and 226.18;

62.     In the course and conduct of offering and making HOEPA mortgage loans and/or extending other consumer credit, Defendants have violated, and continue to violate, the requirements of TILA and Regulation Z by failing to retain evidence of compliance with Regulation Z for two years after the date disclosures are required to be made or action is required to be taken, in violation of Section 226.25(a) of Regulation Z, 12 C.F.R. § 226.25(a).  To date, Plaintiff has no accurate copy of the final loan documents.  Plaintiff requested these documents from New Century, Home 123 AND the title company and received nothing.

63.     Within one year of having extended credit subject to Sec. 226.32, refinance any loan subject to Sec. 226.32 to the same borrower into another loan subject to Sec. 226.32, unless the refinancing is in the borrower's interest. An assignee holding or servicing an extension of mortgage credit subject to Sec. 226.32, shall not, for the remainder of the one-year period following the date of origination of the credit, refinance any loan subject to Sec. 226.32 to the same borrower into another loan subject to Sec. 226.32, unless the refinancing is in the borrower's interest. A creditor (or assignee) is prohibited from engaging in acts or practices to evade this provision, including a pattern or practice of arranging for the **refinancing of its own loans by**

affiliated or unaffiliated creditors, or modifying a loan agreement (whether or not the existing loan is satisfied and replaced by the new loan) and charging a fee.

64.     Defendants engaged in a pattern or practice of extending credit subject to Sec. 226.32 to a consumer based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income, current obligations, and employment. There is a presumption that a creditor has violated this paragraph (a)(4) if the creditor engages in a pattern or practice of making loans subject to Sec. 226.32 without verifying and documenting consumers' repayment ability.

65.     In connection with credit secured by the consumer's dwelling that does not meet the definition in Sec. 226.2(a)(20), a creditor shall not structure a home-secured loan as an open-end plan to evade the requirements of Sec. 226.32.

66.     All the acts described in Paragraphs 1-61 define Defendants, and each of them, jointly and severally, their acts are in clearly the acts of Predatory Lenders defined by the State of California.

67.     It should noted that Plaintiff made several efforts to settle with Defendants, prior to commencing this action and during the early stages of this action.  Plaintiff's good faith attempts to settle with Defendants have been met with deception from Defendants and their counsel.  Plaintiff sought a hasty resolution as it was uncertain of the condition of her son's health and Plaintiff did not believe she would be strong enough to fight for her home.  Defendants actions and deceptions have caused further undue stress and hardship for Plaintiff.  Instead of being fair and reasonable, Defendants continue to create unnecessary stress for Plaintiff.  Plaintiff is and will continue to suffer consequences that have gone far beyond simply the possible loss of her home.  Defendants, and EACH OF them, have caused Plaintiff undue financial difficulty, stress and put unnecessary strain on her daily lifestyle.

68.   Exhibit "A" is a true and correct copy of the legal description of the Property.

69.   Exhibit "B" is a true and correct copy of New Century Mortgage Payment Coupons, Notice of Intent to Foreclose, which expired on August 26, 2006; and various other documents from New Century Corporation relating to the Loan.

70.   Exhibit "C" is a true and correct copy of Home 123's investigation results. Plaintiff's request for investigation was timely made to New Century Mortgage Company AND Home 123. Home 123 is the only one to provide a response.

71.   Exhibit "D" is a true and correct copies of records from the Department of Real Estate's Website reflecting that NO Defendants was registered with the California Department of Real Estate during the time Defendant Chicoine was quoting rates to Plaintiff.

72.   Exhibit "E" is a true and correct copy of the Notice of Acknowledgement and Receipt signed by Defendant Chicoine. After his signature Chicoine wrote: "Home 123 dba NCMC." Defendants claim the proper name should be "New Century Mortgage dba Home 123."

## PLAINTIFF'S DAMAGES

As a direct result of Defendants misconduct and each of them, jointly and severly, Plaintiff has suffered and continued to suffer unnecessary mental stress, anguish and professional ruin from the possibility of becoming homeless with her handicapped son. This stress has resulted in the loss of income, the destruction of a long term banking relationship, the loss of a Mercedes SUV, the loss of financial security and reasonable equity in her own home. Marks suffers enormous additional financial hardship and burden, inability to secure permanent employment and loss of medical benefits. Marks has suffered, will suffer and continues to suffer undue mental

anguish at the hands of Defendants resulting and inhibiting proper care for her handicapped son, while attempting to resolve issues with Defendants.

### PRAYER

WHEREFORE, plaintiff respectfully requests that this Court, as authorized by Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b), Section 108(c) of TILA, 15 U.S.C. § 1607(c), and pursuant to its own inherent equitable powers:

(1) Enter judgment against Defendants and in favor of plaintiff for each violation charged in this First Amended Complaint;

(2)  Enter judgment against Defendants and in favor of plaintiff and grant Plaintiff relief as allowed under HOPEA, TILA and Regulation Z.

(3)  Award such relief as the Court deems necessary to prevent unjust enrichment and to redress consumer injury resulting from defendants' violations of HOEPA, TILA, Regulation Z, and/or Section 5(a) of the FTC Act including, but not limited to, rescission or reformation of contracts, refund of monies paid, and/or disgorgement of ill-gotten gains; and

(4)  Award Plaintiff all costs and expenses of bringing this action, as well as such other additional equitable relief as the Court may determine to be just and proper.

(5)  For legal remedies regarding the penalties for FRAUD, to the maximum allowed by law applied to EACH defendant;

(6)  For Defendants, jointly and/or severally to pay off Plaintiff's SUV as was originally promised in the original refinancing negotiations;

(7)  For punitive damages in an amount in excess of Seventy-One Thousand dollars ($71,000) for Defendants' willful, malicious and conscious disregard of Marks' rights in creating and maintaining fraud, and malicious misconduct and the attempted theft of the home of Plaintiff;

(8)  For interest on damages awarded at the legal rate;

///

**FIRST AMENDED COMPLAINT - 21**

1   (9)   For any and all such other and further relief as this Court considers just and

2   proper.

3

4   Dated October 6, 2006

5

6   Leslie Barnes Marks, In Pro
    Per

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**FIRST AMENDED COMPLAINT - 22**

# EXHIBIT A

97055091

Order No. : 223585-CV

EXHIBIT "A"

The land referred to is situated in the State of California, County of Alameda, City of Oakland, and is described as follows:

A portion of Lots 10, 11 and 12, in Block K, of "Oakland Highlands, 1912", filed April 12, 1912, in Map Book 26, Page 79, Alameda County Records, described as follows:

Beginning at the point of intersection of the Southwestern line of Suter, formerly Maine Street, with the Northwestern line of Curran Avenue, as said street and avenue are shown on the map herein referred to; running thence Northwesterly along said line of Suter, formerly Main Street, 40 feet; thence at right angles Southwesterly 100 feet; thence at right angles Southeasterly 40 feet to the Northwestern line of Curran Avenue; thence Northeasterly along said line of Curran Avenue, 100 feet to the point of beginning.

(Being APN 28-927-6)

# EXHIBIT B



*This Represents Two Months Mortgage Payments*

**Payment Coupon**

☐ If your address, phone number or social security number has changed, check this box and complete the reverse side of this form.

LESLIE BARNES MARKS

| Loan Number | Payment Due Date | Amount Due |
|---|---|---|
| 1006788513 | 06/01/06 | $8,291.64 |
| Late Charge | If Received After | Late Payment Amount |
| $183.32 | 07/16/06 | $8,474.96 |

**Additional Amounts Remitted**

| | |
|---|---|
| Principal | $_____ |
| Escrow | $_____ |
| Late Charge | $_____ |
| Other | $_____ |
| Total Remitted | $_____ |

NEW CENTURY MORTGAGE CORP.
PO BOX 514700
LOS ANGELES   CA 90051-4700

1006788513000829164000847496 7



**Special messages**

Now you can make your mortgage payments online.  It's fast, it's easy and it's free!!!

## Pay-By-Web at https://myloan.newcentury.com

Announcing our new automated SpeedPay IVR/telephone feature.  If your loan is due for the current month, you can now make your payment through our automated IVR for only $5.00 with no waiting.  This feature is available 24 hours a day.  Call 1.888.788.7306 to access this system.

### NEED AFFORDABLE MORTGAGE LIFE PROTECTION?

### 𝕄 NC INSURANCE SERVICES

New Century's own Insurance Agency, NC Insurance Services has arranged for Monumental Life Insurance Company to offer Mortgage Accidental Death coverage at affordable rates that will pay off your mortgage in the event of an unexpected tragedy.  For more info please call 1-800-423-9369.  (Coverage not available in all states)

---

DETACH AND RETURN BOTTOM PORTION

---

## Payment Coupon

☐ If your address, phone number or social security number has changed, check this box and complete the reverse side of this form.

LESLIE BARNES MARKS

| Loan Number | Payment Due Date | Amount Due |
|---|---|---|
| 1006788513 | 06/01/06 | $12,529.12 |
| Late Charge | If Received After | Late Payment Amount |
| $183.32 | 08/16/06 | $12,712.44 |

### Additional Amounts Remitted

| | |
|---|---|
| Principal | $_____ |
| Escrow | $_____ |
| Late Charge | $_____ |
| Other | $_____ |
| Total Remitted | $_____ |

NEW CENTURY MORTGAGE CORP.
PO BOX 514700
LOS ANGELES  CA 90051-4700

10067885130012529120012712443



# NEW CENTURY™
## MORTGAGE CORPORATION

**Mortgage Statement**

Customer Service     1-800-561-4567
Loan Counseling     1-888-788-7306
Mortgage Refinancing/2nd Mortgage     1-888-438-6236

| | |
|---|---|
| Statement Date | 06/17/06 |
| Loan Number | 1006788513 |
| Payment Due Date | 06/01/06 |
| Current Payment | $4,054.16 |
| Past Due Amount(s) | $4,237.48 |
| Unpaid Late Charges | $183.32 |
| Other Charges | $ .00 |
| Total Amount Due | $8,291.64 |
| After 07/16/06 Add | $183.32 |

016790     RE

LESLIE BARNES MARKS
3099 SUTER STREET
OAKLAND CA 94602-2840

Property Address:

    3099 SUTER STREET
    OAKLAND CA 94602-0000

### Account Information

| Balances | | Payment Factors | | Year To Date Figures | |
|---|---|---|---|---|---|
| Principal Balance | $494,879.14 | Interest Rate | 8.600% | Interest | $3,897.39 |
| Escrow Balance | $845.42 | Principal & Interest | $3,666.52 | Taxes | $ .00 |
| Unpaid Late Charges | $183.32 | Escrow Payment | $387.64 | | |
| Other Charges | $ .00 | Optional Products | $ .00 | | |
| Suspense Balance | $ .00 | Other | $ .00 | | |
| | | Total Payment | $4,054.16 | | |

### Important Messages

Available Now: Online Access at MyLoan.NewCentury.com!
New Century Mortgage Corporation offers you a new resource, MyLoan.NewCentury.com our loan
servicing Web site available now.
At MyLoan.NewCentury.com, you can get 24/7 access to review your account balance and activity,
verify your loan details, contact us with questions, and request your loan payoff amount.
Customer service representatives are also available at 800.561.4567 Monday through Friday,
6:00 a.m. to 6:00 p.m. pacific time.

### Activity Since Your Last Statement

| Date | Description | Amount | Principal | Interest | Escrow | Late Charge | Miscellaneous |
|---|---|---|---|---|---|---|---|
| 05/16 | Curtailment | $1.84 | $1.84 | | | | |
| 05/16 | Mortgage Payment | $4,054.16 | $119.02 | $3,547.50 | $387.64 | | |
| 04/01 | Single Item Rece | $457.78 | | | $457.78 | | |
| 04/01 | Closing Interest | $349.89 | | $349.89 | | | |

### Special Messages

Now you can make your mortgage payments online. It's fast, it's easy and it's free!!!
**Pay-By-Web** at https://myloan.newcentury.com

Announcing our new automated SpeedPay IVR/telephone feature. If your loan is due for the current month,
you can now make your payment through our automated IVR for only $5.00 with no waiting. This feature is
available 24 hours a day. Call 1.800.788.7306 to access this system.

### NEED AFFORDABLE MORTGAGE LIFE PROTECTION? Watch for an offering in the mail this month from

## NC INSURANCE SERVICES

New Century's own insurance Agency, NC Insurance Services has arranged for Monumental Life Insurance Company to offer Mortgage/Accidental
Death coverage at affordable rates that will pay off your mortgage in the event of an unexpected tragedy. For more info please call 1-800-423-9369.
(Coverage not available in all states)

DETACH AND RETURN BOTTOM PORTION


**New Century** ℠
MORTGAGE CORPORATION

P.O. Box 54285, Irvine, CA 92619-4285  (800) 561-4567  Fax (949) 797-5220

EA207
1006788513

07/31/06

LESLIE BARNES MARKS

3099 SUTER STREET
OAKLAND            CA  94602-0000

Re:  Loan Number 1006788513

Dear Mortgagor(s):

This letter is to advise you that your impound/escrow account has
been reanalyzed for the following reason:

due to taxes are more than what was estimated at closing.


As a result, effective 09/01/06  , your payment will be
$ 4203.89 .

New Century Mortgage Corporation is committed to customer
and we appreciate the opportunityto assist you with your mortgage
need. If you have any additional questions, please contact the
Customer Service Department at 800-561-4567, between the hours of
6:00 AM and 6:00 PM, Monday through Friday, Pacific Time.

Sincerely,



Customer Service Department
New Century Mortgage Corporation



2-07



**NEW CENTURY** ™
MORTGAGE CORPORATION

| | |
|---|---|
| Customer Service | 1-800-561-4567 |
| Loan Counseling | 1-888-788-7306 |
| Mortgage Refinancing/2nd Mortgage | 1-888-438-6236 |

004391               RE

LESLIE BARNES MARKS
3099 SUTER STREET
OAKLAND  CA  94602-2840

Illulladlllallaalldlalldalalldaldalaldall

### Mortgage Statement

| | |
|---|---|
| Statement Date | 07/25/06 |
| Loan Number | 1006788513 |
| Payment Due Date | 06/01/06 |
| Current Payment | $4,054.16 |
| Past Due Amount(s) | $8,474.96 |
| Unpaid Late Charges | $366.64 |
| Other Charges | $ .00 |
| Total Amount Due | $12,529.12 |
| After 08/16/06 Add | $183.32 |

Property Address:
   3099 SUTER STREET
   OAKLAND  CA 94602-0000

### Account Information

| Balances | | Payment Factors | | Year To Date Figures | |
|---|---|---|---|---|---|
| Principal Balance | $494,879.14 | Interest Rate | 8.600% | Interest | $3,897.39 |
| Escrow Balance | $845.42 | Principal & Interest | $3,666.52 | Taxes | $ .00 |
| Unpaid Late Charges | $366.64 | Escrow Payment | $387.64 | | |
| Other Charges | $ .00 | Optional Products | $ .00 | | |
| Suspense Balance | $ .00 | Other | $ .00 | | |
| | | Total Payment | $4,054.16 | | |

### Important Messages

**Available Now: Online Access at MyLoan.NewCentury.com!**
New Century Mortgage Corporation offers you a new resource. MyLoan.NewCentury.com our loan
servicing Web site available now.
At MyLoan.NewCentury.com, you can get 24/7 access to review your account balance and activity,
verify your loan details, contact us with questions, and request your loan payoff amount.
Customer service representatives are also available at 800.561.4567 Monday through Friday,
6:00 a.m. to 6:00 p.m. pacific time.

### Activity Since Your Last Statement

| Date | Description | Amount | Principal | Interest | Escrow | Late Charge | Miscellaneous |
|---|---|---|---|---|---|---|---|
| 05/16 | Curtailment | $1.84 | $1.84 | | | | |
| 05/16 | Mortgage Payment | $4,054.16 | $119.02 | $3,547.50 | $387.64 | | |
| 04/01 | Single Item Rece | $457.78 | | | $457.78 | | |
| 04/01 | Closing Interest | $349.89 | | $349.89 | | | |

**NEW CENTURY**
MORTGAGE CORPORATION

P.O. Box 54285, Irvine, CA 92619-4285  (888) 788-7306  Fax (949) 517-5170

NO565

07/26/06

LESLIE BARNES MARKS

3099 SUTER STREET
OAKLAND             CA    94602-0000

Property Address  3099 SUTER STREET
                  OAKLAND             CA 94602-0000

RE: Loan Number:  1006788513

NOTICE OF INTENT TO FORECLOSE

Dear Mortgagor(s):

The above-referenced loan is in default because the monthly
payment(s) due on and after 06/01/06 have not been received. The
amount required to cure this delinquency, as of the date of this
letter, is $       8474.96, less $         .00, monies held in
Unapplied.

SUBSEQUENT PAYMENTS, LATE CHARGES, AND OTHER FEES WILL BE ADDED
TO THE ABOVE-STATED REINSTATEMENT AMOUNT AS THEY ARE ASSESSED.

Please remit the total amount due in CERTIFIED FUNDS, utilizing
one of the following payment resources:

| Overnight Mail: | Western Union |
|---|---|
| New Century Mortgage Corporation | Quick Collect (any location): |
| Attn: Payment Processing | Code City- NCCommerce |
| 1610 E. St. Andrew Pl. Ste. B-150 | Code State- CA |
| Santa Ana, CA  92705 | |

Failure to cure the delinquency within 30 days of the date of
this letter may result in acceleration of the sums secured by
the Deed of Trust or Mortgage and in the sale of the property.
You have the right to reinstate your loan after legal action
has begun. You also have the right to assert in foreclosure, the
non-existence of a default or any other defense to acceleration
and foreclosure.

Should you have any questions, please contact our office at
1-888-788-7306, Monday through Thursday, 6:00 AM to 8:00 PM
and Friday, 6:00 AM to 6:00 PM, Pacific Time.

565-Page 1 of 2



P.O. Box 54285, Irvine, CA 92619-4285  (800) 561-4567  Fax (949) 797-5220

EA207
1006788513

07/31/06

LESLIE BARNES MARKS

3099 SUTER STREET
OAKLAND          CA  94602-0000

Re:  Loan Number 1006788513

Dear Mortgagor(s):

This letter is to advise you that your impound/escrow account has
been reanalyzed for the following reason:

due to taxes are more than what was estimated at closing.

As a result, effective 09/01/06  , your payment will be
$ 4203.89 .

New Century Mortgage Corporation is committed to customer
and we appreciate the opportunityto assist you with your mortgage
need. If you have any additional questions, please contact the
Customer Service Department at 800-561-4567, between the hours of
6:00 AM and 6:00 PM, Monday through Friday, Pacific Time.

Sincerely,

Customer Service Department
New Century Mortgage Corporation

2-07

# EXHIBIT C



**Cutting through the loan clutter**

Direct Dial: (949) 255-6838
Fax:        (949) 222-3516

June 2, 2006

**Via U.S. Mail**
Leslie Marks
3099 Suter Street
Oakland, CA 94602

Re:    Loan Number 1006788513

Dear Ms. Marks:

This is in follow-up to your recent inquiry regarding the above-referenced loan originated by Home 123 Corporation ("Home 123").

Home 123 is committed to customer satisfaction and regrets any misunderstanding you may have experienced. Our review of this matter confirmed that the terms of the loan were fully disclosed and in compliance with applicable law.

If we can be of further assistance to you, please contact this office at (866) 782-4004.

Sincerely,

Stacy Seymour
Jr. Regulatory Analyst

SDS/
Cc:    Charles E. Houston, Jr., Assistant Vice President and Senior Counsel

18400 Von Karman Avenue, Suite 1000
Irvine, CA 92612

www.Home123.com

# EXHIBIT D

# STATE OF CALIFORNIA
# DEPARTMENT OF REAL ESTATE

The license information shown below represents public information taken from the Department of Real Estate's database at the time of your inquiry. It will not reflect pending changes which are being reviewed for subsequent database updating. Also, the license information provided includes formal administrative actions that have been taken against licensees pursuant to the Business and Professions Code and/or the Administrative Procedure Act. All of the information displayed is public information. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

License information taken from records of the Department of Real Estate on 8/24/2006 9:50:52 PM

| | |
|---|---|
| **License Type:** | CORPORATION |
| **Name:** | New Century Mortgage Corporation |
| **Mailing Address:** | 18400 VON KARMAN STE 1000 IRVINE, CA 92612 |
| **License ID:** | 01201612 |
| **Expiration Date:** | 09/20/99 |
| **License Status:** | EXPIRED |
| **Original License Date:** | 09/21/95 (Unofficial -- taken from secondary records) |
| **Former Name(s):** | Jbe Mortgage Corporation |
| **Main Office:** | NO CURRENT MAIN OFFICE ADDRESS ON FILE |
| **Licensed Officer(s):** | DESIGNATED OFFICER 01196254 - Expiration Date: 09/20/99 Morrice, Bradley Alexander EXPIRED AS OF 09/21/99 |
| **DBA** | NO CURRENT DBAS |
| **Branches:** | NO CURRENT BRANCHES |
| **Comment:** | NO DISCIPLINARY ACTION |
| | NO OTHER PUBLIC COMMENTS |
| | >>>> Public information request complete <<<< |

# Public License Information

Please enter the Licensee's Name (Last Name, First Name), Company Name or License Identification Number.  Name Search Help

**Licensee/Company Name:** HOME 123

**Mailing Address City** *(optional)*:

OR

**License ID:**

[ Clear ]  [ Find ]

**Note:** The "Mailing Address City" may differ from the licensee's main office and/or branch office city.

**No matching public record was found for Licensee: HOME 123**

**Home**

## Public License Information

Please enter the Licensee's Name (Last Name, First Name), Company Name or License Identification Number.  Name Search Help

**Licensee/Company Name:** CHICOINE, TOM

**Mailing Address City** *(optional)*:

OR

**License ID:**

[ Clear ] [ Find ]

**Note:** The "Mailing Address City" may differ from the licensee's main office and/or branch office city.

**No matching public record was found for Licensee:
CHICOINE, TOM**

**Home**

## Public License Information

Please enter the Licensee's Name (Last Name, First Name), Company Name or License Identification Number.  Name Search Help

**Licensee/Company Name:** CHICOINNE, TOM

**Mailing Address City** *(optional)*:

OR

**License ID:**

[ Clear ] [ Find ]

**Note:** The "Mailing Address City" may differ from the licensee's main office and/or branch office city.

**No matching public record was found for Licensee:**
**CHICOINNE, TOM**

**Home**

# EXHIBIT E


*4730455*

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Leslie Barnes Marks

3099 Suter Street

Oakland, CA 94602
TELEPHONE NO.: 510/434-9748          FAX NO. *(Optional):* 866/814-8313
E-MAIL ADDRESS *(Optional):* blaqrubi@yahoo.com
ATTORNEY FOR *(Name):* In Pro Per

**FILED**
**ALAMEDA COUNTY**

JUL 2 0 2006

CLERK OF THE SUPERIOR COURT
By *(illegible signature)*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: **1225 Fallon Street**
MAILING ADDRESS:
CITY AND ZIP CODE: **Oakland, CA  94612**
BRANCH NAME:

PLAINTIFF/PETITIONER: Leslie Barnes Marks

DEFENDANT/RESPONDENT: Tom Chicoine, Home123.com and New Century, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: RG06276972 |
|---|---|

TO *(Insert name of party being served):* Tom Chicoine

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 8, 2006

Sharon Searcie
_____
(TYPE OR PRINT NAME)

► *(signature)* Sharon Sea—
_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*  Lis Pendens

*(To be completed by recipient):*

Date this form is signed:

Tom Chicoine   Home123
dba NCMC
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

► *(signature)*
_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1 Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov American LegalNet, Inc. www.USCourtForms.com |
|---|---|---|

# EXHIBIT F

# STATE OF CALIFORNIA
# DEPARTMENT OF REAL ESTATE

The license information shown below represents public information taken from the Department of Real Estate's database at the time of your inquiry. It will not reflect pending changes which are being reviewed for subsequent database updating. Also, the license information provided includes formal administrative actions that have been taken against licensees pursuant to the Business and Professions Code and/or the Administrative Procedure Act. All of the information displayed is public information. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

License information taken from records of the Department of Real Estate on 8/24/2006 9:50:52 PM

| | |
|---|---|
| **License Type:** | CORPORATION |
| **Name:** | New Century Mortgage Corporation |
| **Mailing Address:** | 18400 VON KARMAN STE 1000<br>IRVINE, CA 92612 |
| **License ID:** | 01201612 |
| **Expiration Date:** | 09/20/99 |
| **License Status:** | EXPIRED |
| **Original License Date:** | 09/21/95 (Unofficial -- taken from secondary records) |
| **Former Name(s):** | Jbe Mortgage Corporation |
| **Main Office:** | NO CURRENT MAIN OFFICE ADDRESS ON FILE |
| **Licensed Officer(s):** | DESIGNATED OFFICER<br>01196254 - Expiration Date: 09/20/99<br>Morrice, Bradley Alexander<br>EXPIRED AS OF 09/21/99 |
| **DBA** | NO CURRENT DBAS |
| **Branches:** | NO CURRENT BRANCHES |
| **Comment:** | NO DISCIPLINARY ACTION |
| | NO OTHER PUBLIC COMMENTS |
| | >>>> Public information request complete <<<< |

DRE - Public Licensee Information

## Public License Information

Please enter the Licensee's Name (Last Name, First Name), Company Name or License Identification Number.  Name Search Help

**Licensee/Company Name:** HOME 123

**Mailing Address City** *(optional)*:

OR

**License ID:**

[Clear] [Find]

**Note:** The "Mailing Address City" may differ from the licensee's main office and/or branch office city.

**No matching public record was found for Licensee: HOME 123**

**Home**

## Public License Information

Please enter the Licensee's Name (Last Name, First Name), Company Name or License Identification Number.  Name Search Help

**Licensee/Company Name:** CHICOINE, TOM

**Mailing Address City** *(optional)*:

OR

**License ID:**

[Clear] [Find]

**Note:** The "Mailing Address City" may differ from the licensee's main office and/or branch office city.

**No matching public record was found for Licensee: CHICOINE, TOM**

**Home**

DRE - Public Licensee Information

---

## Public License Information

Please enter the Licensee's Name (Last Name, First Name), Company Name or License Identification Number.  Name Search Help

**Licensee/Company Name:** CHICOINNE, TOM

**Mailing Address City** *(optional)*:

OR

**License ID:**

[ Clear ] [ Find ]

**Note:** The "Mailing Address City" may differ from the licensee's main office and/or branch office city.

**No matching public record was found for Licensee: CHICOINNE, TOM**

---

Home

---

http://www2.dre.ca.gov/PublicASP/pplinfo.asp?start=1

8/24/2006

# STATE OF CALIFORNIA
# DEPARTMENT OF REAL ESTATE

The license Information shown below represents public Information taken from the Department of Real Estate's database at the time of your Inquiry. It will not reflect pending changes which are being reviewed for subsequent database updating. Also, the license Information provided Includes formal administrative actions that have been taken against licensees pursuant to the Business and Professions Code and/or the Administrative Procedure Act. All of the Information displayed Is public Information. Although the business and mailing addresses of real estate licensees are included, this Information Is not Intended for mass mailing purposes.

License information taken from records of the Department of Real Estate on 8/24/2006 11:54:04 PM

| | |
|---|---|
| **License Type:** | CORPORATION |
| **Name:** | Fremont Mortgage Corp |
| **Mailing Address:** | 39505 PASEO PADRE PKY<br>FREMONT, CA 94538 |
| **License ID:** | 01384070 |
| **Expiration Date:** | 05/21/07 |
| **License Status:** | LICENSED |
| **Original License Date:** | 05/22/03 (Unofficial -- taken from secondary records) |
| **Former Name(s):** | NO FORMER NAMES |
| **Main Office:** | 39505 PASEO PADRE PKY<br>FREMONT, CA 94538 |
| **Licensed Officer(s):** | DESIGNATED OFFICER<br>01253491 - Expiration Date: 05/21/07<br>Siddiq, Mariam Azizi |
| **DBA** | NO CURRENT DBAS |
| **Branches:** | NO CURRENT BRANCHES |
| **Salespersons:** | 01267650 - Siddiq, Jawid |
| **Comment:** | NO DISCIPLINARY ACTION |
| | NO OTHER PUBLIC COMMENTS |

>>>> Public information request complete <<<<

*[handwritten note: Former Mortgage Company Licensed!]*