IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE BARNES MARKS, | No. C 06-06806 SI |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE** |
| v. | |
| TOM CHICOINE, et al., | |
| Defendants. | |

Defendants have filed a motion to dismiss, and a motion to strike certain portions of, plaintiff's First Amended Complaint. The motions are currently scheduled for hearing on January 19, 2007. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motions are appropriate for resolution without oral argument, and VACATES the hearing. As set forth below, the Court GRANTS IN PART defendants' motion to dismiss, and DENIES defendants' motion to strike. Plaintiff's complaint is dismissed with leave to amend. **Plaintiff must file her amended complaint on or before February 9, 2007.**

## BACKGROUND

This case centers on allegations that defendants misled plaintiff into placing an economically burdensome mortgage on her home.[1] In February 2006, plaintiff Leslie Marks contacted defendant Home123.com to inquire about refinancing her home at a lower rate. Plaintiff spoke with Moesha Bazemore, who though very helpful, was ultimately unable to offer plaintiff a lower rate mortgage. Ms. Bazemore advised plaintiff that she needed to consult with defendant Tom Chicoine, Bazemore's

---

[1] All of the following facts are taken from plaintiff's First Amended Complaint, the allegations of which must be taken as true at this point in the proceedings. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)

manager, in order to further investigate plaintiff's options. Subsequently, Chicoine repeatedly attempted to get in touch with plaintiff; plaintiff avoided these attempts, and sought instead to continue working with Ms. Bazemore, who plaintiff found to be very helpful and friendly. Chicoine ultimately told plaintiff that he had fired Ms. Bazemore.

Plaintiff reiterated to Chicoine that she simply wanted to refinance her mortgage for a lower interest rate, and did not want to take out any cash from the mortgage. Chicoine advised plaintiff that he could reduce her mortgage rate from 9.0% to 8.2%. Despite this initial representation, in subsequent conversations, Chicoine stated the new interest rate as 8.24%, or as 8.42%. After plaintiff questioned him about these inconsistencies, Chicoine confirmed to plaintiff that the new rate would in fact be only 8.2%. Plaintiff repeatedly insisted that she would not agree to any rate higher than 8.2%. Plaintiff also discussed with Chicoine the possibility of paying off the loan on her vehicle as part of the new mortgage.

On a Friday, date unspecified, a Notary arrived at plaintiff's house with the new loan documents. The new loan documents stated a rate of 8.62%. Plaintiff attempted to call Chicoine regarding the rate, but he did not answer his phone. The Notary advised plaintiff that she had four days, including the weekend, to rescind the loan, and plaintiff subsequently signed the papers. After signing the papers, plaintiff again attempted to contact Chicoine, and left a message on his personal cell phone.

On Saturday, plaintiff again left a message for Chicoine on his personal cell phone, advising him that she was cancelling the new loan. Chicoine returned plaintiff's call, and advised her that he would work everything out by Monday. Plaintiff reiterated that she would not sign a loan with a rate greater than 8.2%. Chicoine told plaintiff that his secretary must have made a typo when she drafted the documents, and told plaintiff not to worry. Plaintiff confirmed with Chicoine that the rate of the new loan would be 8.2%, that she would receive $12,000 cash, that the loan on her vehicle would be paid off, and that she would still have $100,000 in equity in her house.

On Monday, plaintiff again left a message for Chicoine, advising him that if she did not receive papers reflecting the changes discussed, she would not accept the new loan. Plaintiff did not hear back from Chicoine on either Monday or Tuesday. Having received no response, and being unable to contact Chicoine, plaintiff advised the person who answered Chicoine's phone that she was cancelling the new loan.

2

Chicoine finally called plaintiff on Wednesday, and stated that he had "found a way to give you $10,000" as part of the refinance. Plaintiff replied, "You can give me $10,000 and pay off the [vehicle loan] and I will still have $100,000 equity in my home?" Chicoine affirmed, stating "Yes. All is as we agreed."

Plaintiff requested that they use Chicago Title Company as the escrow agent. Chicoine agreed. Plaintiff later called Chicago Title to inquire about the escrow, and they informed her that no escrow account had been established with them. Plaintiff then called Chicoine, who informed her that he was using American Title Company instead. Chicoine subsequently informed plaintiff that the holder of the new mortgage would be defendant New Century Mortgage Corporation ("New Century"). Plaintiff was surprised, because she thought she had been working with Home123.com, and because she had previously sought to refinance directly with New Century, and they had rejected her application.

Plaintiff ultimately received the proceeds of the new loan in her bank account, but never received any revised loan documents. Plaintiff repeatedly attempted to contact Chicoine regarding the revised documents, but was never able to reach him. Plaintiff then received her first monthly invoice from New Century; she was dismayed to find that the new monthly payment was $4,054.16, approximately $700 more per month than the original loan. Plaintiff renewed her fruitless attempts to contact Chicoine. Plaintiff also realized at some point that Chicoine placed her in a 40 year mortgage rather than a 30 year mortgage, without her knowledge or consent.

Plaintiff then contacted New Century, and requested that they investigate the situation. New Century replied that Home123.com would have to investigate. Plaintiff received a letter from Home123.com stating that the loan documents were proper.

On June 28, 2006, plaintiff, acting pro se, filed a complaint in Alameda County Superior Court. On October 6, 2006, the parties stipulated to removal of the action to this Court, and the filing of plaintiff's First Amended Complaint. Defendants have now moved to dismiss all six causes of action contained in plaintiff's First Amended Complaint ("FAC").

///

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because of the limited importance of pleadings in federal matters, motions to strike are generally disfavored. *See Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Where the motion involves background or historical material, it should not be granted unless the material is prejudicial to the opponent. *See LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 n.34 (C.D. Cal. 1996).

# DISCUSSION

## 1. First cause of action: intentional fraudulent misrepresentation and negligence

### A. Intentional fraudulent misrepresentation

According to California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." *Gil v. Bank of Am., Nat'l Ass'n*, 42 Cal. Rptr. 3d 310, 317 (Cal. Ct. App. 2006). Common law claims of fraud must be pled with particularity. *See* Fed. R. Civ. P. 9(b) ("in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."). Therefore, in addition to the "time, place and content of an alleged misrepresentation," a complaint "must set forth what is false or misleading about a statement, and . . . an explanation as to why the statement or omission complained of was false or misleading." *Yourish v. California Amplifier*, 191 F.3d 983, 993 & n.10 (9th Cir. 1999). These requirements can be fulfilled by pointing to information that was available to the defendants at the time that the allegedly false statements were made. *See Yourish*, 191 F.3d at 993.

As an initial matter, defendants are correct that plaintiff's complaint does not specify the dates when the alleged misrepresentations were made. Plaintiff only provides the month (February, 2006) in which she first contacted Home123.com. On amendment, plaintiff must indicate the approximate dates on which the conversations occurred and on which she signed the new loan documents. *See Yourish*, 191 F.3d at 993.

Defendants also argue that plaintiff fails adequately to allege a fraud claim against defendant New Century. The FAC alleges only that Chicoine and Home123.com made misrepresentations "with the approval of New Century Mortgage . . . ." FAC ¶ 36. The Court agrees that this allegation is insufficient. In order to state a claim against New Century, plaintiff must allege specifically how New Century was involved in the fraud.

Defendants next argue that plaintiff fails to adequately allege that the misrepresentations were false when the defendants made them. Citing a Ninth Circuit case, *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (*en banc*), defendants argue that "plaintiffs may not simply point to a past statement, note that it happens to conflict with the current state of affairs, and then conclude that the statement must therefore have been false when made." Mot. at 4:8-11. Defendants'

statement of the law is incomplete. *GlenFed* was a securities fraud case, and the principle pointed to by defendants is unique to that context. As the Ninth Circuit stated in *GlenFed*,

> Securities fraud cases often involve some more or less catastrophic event occurring between the time the complained-of statement was made and the time a more sobering truth is revealed (precipitating a drop in stock price). Such events might include, for example, a general decline in the stock market, a decline in other markets affecting the company's product, a shift in consumer demand, the appearance of a new competitor, or a major lawsuit. When such an event has occurred, it is clearly insufficient for plaintiffs to say that the later, sobering revelations make the earlier, cheerier statement a falsehood. In the face of such intervening events, a plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*.

*Id.* at 1548 (emphasis in original). Thus, where there are likely to be "intervening events" which might explain away a discrepancy between a "cheerier statement [and] a falsehood," the complaint must make specific allegations explaining how and why the statement was false when made. This is not such a case. Here, the principal falsehood alleged by plaintiff centers on multiple assurances by Chicoine that plaintiff's new rate was 8.2%, when in fact she would receive an 8.62% rate. With respect to this falsehood, plaintiff has alleged sufficient facts to raise an inference that the statements made by Chicoine were false when made, and that he knew they were false when made.

Defendants also argue that plaintiff fails to adequately allege justifiable reliance on the purported misrepresentations. The Court disagrees. Paragraph 36 of the FAC states that "[p]laintiff would not have agreed to the loan if she was not misled by the Defendants, and each of them." Defendants appear to suggest that because she signed the loan agreements, plaintiff could not have relied on Chicoine's alleged misrepresentations. Plaintiff has adequately alleged, however, that Chicoine's repeated assurances regarding the terms of the loan led her to not definitively rescind the new loan agreement within the allowed time frame.

Finally, defendants argue that plaintiff fails to allege what damage she suffered as a result of Chicoine's alleged misrepresentations. Again, the Court disagrees. Plaintiff alleges that her new monthly payments under the loan are approximately $700 more than under her old loan, FAC ¶ 28, that she has a higher interest rate than promised, and that the equity in her home has been depleted, FAC ¶ 37. A higher interest rate resulting in a higher mortgage payment, and depletion of equity, both constitute cognizable damages.

6

The inadequacies of plaintiff's first cause of action appear curable by amendment. The Court will therefore GRANT defendants' motion to dismiss the first cause of action, with leave to amend. Plaintiff may amend her complaint to indicate the time frame during which the alleged acts occurred, and to adequately explain the involvement of New Century in the alleged fraud, should she wish to do so.

### B. Negligent misrepresentation

Plaintiff's first cause of action also lists "negligence" in the section heading. In their motion to dismiss, defendants appear to interpret this as an attempt by plaintiff to allege a cause of action for common law negligence. However, the Court interprets this as an attempt by plaintiff to allege a claim for negligent misrepresentation.

To state a claim for negligent misrepresentation, a plaintiff must allege that: (1) the defendant made a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed; and (5) damages. *See B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (Cal. Ct. App. 1997).

The Court finds that plaintiff has adequately stated a claim for negligent misrepresentation. She alleges that Chicoine repeatedly misrepresented the terms of her loan, both before and after she signed the loan documents; after she signed the loan documents, the terms of the loan were an "existing material fact." Considering that he was responsible for issuing the loan, it can be inferred that Chicoine was well aware of its true terms, and that he therefore did not have reasonable grounds for believing his misstatements to be true. Furthermore, as discussed above, plaintiff sufficiently alleges that she relied on Chicoine's misrepresentations, and that she was damaged by those misrepresentations. The Court therefore DENIES defendant's motion to dismiss with respect to plaintiff's negligent misrepresentation claim.

### 2. Second cause of action: breach of the implied covenant of good faith and fair dealing

Under California law, there exists a cause of action for breach of the implied covenant of good

7

faith under both tort principles and contract principles.

"A tort claim for breach of the implied covenant of good faith and fair dealing requires proof of a special relationship between the parties, characterized by elements of public interest, adhesion and fiduciary responsibility." *Tominaga v. Shepherd*, 682 F. Supp. 1489, 1498 (C.D. Cal. 1988) (citing *Seaman's Direct Buying Service, Inc. v. Standard Oil*, 36 Cal. 3d 752, 768-69, 206 Cal. Rptr. 354, 686 P.2d 1158 (1984)). "[A] number of factors which must be present for a 'special relationship' to exist; (1) the parties are in inherently unequal bargaining positions, (2) the plaintiff's motivation for entering into the contract must be a non-profit motivation (to secure peace of mind, security and future protection), (3) plaintiff is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the defendant to perform, and (4) defendant is aware of plaintiff's vulnerability." *Id.* (citing *Wallis v. Superior Court*, 160 Cal. App. 3d 1109, 1118).

Under contract principles, "California law implies a covenant of good faith and fair dealing in every contract." *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989) (citation omitted). "The implied covenant imposes certain obligations on contracting parties as a matter of law -- specifically, that they will discharge their contractual obligations fairly and in good faith." *Id.* (citing *Koehrer v. Superior Court*, 181 Cal. App. 3d 1155, 1169, 226 Cal. Rptr. 820, 828 (1986)). "A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements: (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Garey/Philadelphia v. Yoshinoya West, Inc.*, 2006 Cal. App. Unpub. LEXIS 11533 at *1, *11-*12 (Cal. Ct. App. Dec. 21, 2006) (citing 1-300 Judicial Council of California Civil Jury Instructions 325).

Plaintiff has not adequately alleged how the defendants "unfairly interfered with the plaintiff's right to receive the benefits of the contract." *Id.* Nor has plaintiff adequately alleged facts which would support a tort cause of action for breach of the implied covenant of good faith. The Court therefore DISMISSES her second cause of action with leave to amend.

8

**3.      Third cause of action: unfair business practices**

Under § 17200 of the Business and Professions Code, unfair competition is defined as "any unlawful, unfair, or fraudulent business act or practice . . . ." "'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition--acts or practices which are unlawful, or unfair, or fraudulent.'" *Schvatrz v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1159 (2000) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647(1996)).

> Pursuant to Bus. & Prof., Code, § 17200, which defines unfair competition, the "unlawful" practices prohibited are any practices forbidden by law be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. It is not necessary that the predicate law provide for private civil enforcement.  Section 17200 borrows violations of other laws and treats them as unlawful practices independently actionable. "Unfair" simply means any practice whose harm to the victim outweighs its benefits. "Fraudulent," as used in the statute, does not refer to the common law tort of fraud, but only requires a showing members of the public are likely to be deceived.

*Saunders v Superior Court*, 27 Cal.App. 4th 832 (1994).

> There are two lines of appellate opinions addressing the definition of "unfair" within the meaning of the UCL in consumer actions.  One line defines "unfair" as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.  The other line of cases holds that the public policy which is a predicate to a consumer unfair competition action under the "unfair" prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions. . . .

*Bardin v. DamlierChrysler Corp.*, 136 Cal. App. 4th 1255, 1260-61 (Cal. Ct. App. 2006) (citations omitted).  "The 'fraud' prong of the UCL requires [that] 'members of the public are likely to be deceived' by the challenged conduct." *Id.* at 1261.

As discussed above, thus far plaintiff has not adequately alleged the time frame of the events charged in the complaint, and for that reason her fraud claim is being dismissed with leave to amend. For the same reasons, her current complaint does not adequately state a violation of section 17200, and it must be dismissed.  If on amendment, plaintiff is able to indicate the time frame during which the alleged actions took place, she will successfully state a claim for fraud against Chicoine and Home123.com, and the allegations underlying her fraud claim will also be sufficient to state a claim for violation of section 17200.

///

**4.    Fourth cause of action: violation of the Truth in Lending Act (TILA)**

Plaintiff's fifth cause of action, entitled "violation of the truth in lending act," lists a variety of statutes and regulations which were allegedly violated, including several sections of the Federal Trade Commission Act, the Truth in Lending Act (TILA), the Home Ownership and Equity Protection Act, and TILA implementing Regulation Z.  The FAC does not allege how defendants violated the various statutes and regulations mentioned, and thus does not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957).  The Court therefore DISMISSES plaintiff's fourth cause of action, with leave to amend.  Should she choose to amend this cause of action, plaintiff should be sure to comply with Rule 8(e) of the Federal Rules of Civil Procedure, which requires that "each averment of a pleading shall be simple, concise, and direct."  In practical terms, the requirements of Rule 8 ensure that a defendant will be able to respond to the allegations against her.  *Edwards v. N. Am. Rockwell Corp.*, 291 F. Supp. 199, 211 (C.D. Cal. 1968) ("Rule 8(a)(2) envisions the presentation of factual allegations of sufficient clarity and certainty to enable defendants to determine the basis of plaintiff's claim and to formulate a responsive pleading.").

**5.    Fifth cause of action: violation of the Home Ownership and Equity Protection Act of 1994**

The Home Ownership and Equity Protection Act of 1994 ("HOEPA") augmented TILA with additional disclosure obligations and substantive requirements for particular high-cost mortgages. *See* 15 U.S.C. § 1602(aa), 1639.  HOEPA applies to:

> a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if – (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (B) the total points and fees payable by the consumer at or before closing will exceed the greater of – (i) 8 percent of the total loan amount; or (ii) $ 400.

15 U.S.C. § 1602(aa).

Defendants argue that plaintiff has failed to allege facts sufficient to establish that the subject loan was a high-risk loan subject to HOEPA.  The Court agrees.  Plaintiff must allege facts supporting

a conclusion that HOEPA applies to the loan at issue, under the requirements of § 1602(aa). The Court therefore DISMISSES plaintiff's fifth cause of action, with leave to amend.

**6.    Motion to strike paragraph 7 of the prayer for relief**

Defendants move to strike paragraph 7 of the prayer for relief, which requests punitive damages. California Civil Code section 3294 allows for punitive damages where a plaintiff can prove by clear and convincing evidence that the defendants are guilty of oppression, fraud, or malice. As discussed above, plaintiff has failed to state a claim for fraud, but her failure to do so appears curable by amendment. The Court therefore DENIES defendants' motion to strike, without prejudice to renewing the motion should plaintiff fail to state a claim for fraud upon amendment.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' motion to dismiss plaintiff's First Amended Complaint. (Docket No. 7). **Plaintiff must file a seconded amended complaint, should she wish to do so, by February 9, 2007.** The Court DENIES defendants' motion to strike, without prejudice. (Docket No. 6)

**IT IS SO ORDERED.**

Dated: January 18, 2007

SUSAN ILLSTON
United States District Judge