1

2

3

4

5                   IN THE UNITED STATES DISTRICT COURT

6                FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8 LESLIE BARNES MARKS,                No. C 06-06806 SI

9         Plaintiff,             **ORDER GRANTING IN PART**

**DEFENDANTS' MOTIONS TO DISMISS**

10    v.                      **AND TO STRIKE**

11 TOM CHICOINE, et al.,

12         Defendant.

13 ————————————————————/

14      On April 2, 2007, defendants New Century Mortgage Corporation and Home123 Corporation

15 filed voluntary petitions for relief under 11 U.S.C. §§ 101, *et seq.* in the United States Bankruptcy Court,

16 District of Delaware.[1]  This Court must therefore STAY these proceedings with respect to these

17 defendants pursuant to 11 U.S.C. § 362(a).

18      Defendants have filed a motion to dismiss, and a motion to strike certain portions of, plaintiff's

19 Second Amended Complaint.  Though these motions are now stayed with respect to defendants New

20 Century and Home123, they are not stayed with respect to defendant Chicoine.  As set forth below, the

21 Court GRANTS IN PART defendants' motion to dismiss, and GRANTS IN PART defendants' motion

22 to strike.  Plaintiff's complaint is dismissed with leave to amend.  Plaintiff must file her amended

23 complaint on or before April 27, 2007.

24

25

26

27

28          [1]Bankruptcy Case Nos. 07-10419-KJC; 07-10421-KJC

United States District Court
For the Northern District of California

**BACKGROUND**

This case centers on allegations that defendants misled plaintiff into placing an economically burdensome mortgage on her home.[2]  In February 2006, plaintiff Leslie Marks contacted defendant Home123 Corporation ("Home123") to inquire about refinancing her home at a lower rate.  Plaintiff spoke with Moesha Bazemore, who though very helpful, was ultimately unable to offer plaintiff a lower rate mortgage. Ms. Bazemore advised plaintiff that she needed to consult with defendant Tom Chicoine, Bazemore's manager, in order to further investigate plaintiff's options.  Subsequently, Chicoine repeatedly attempted to get in touch with plaintiff; plaintiff avoided these attempts, and sought instead to continue working with Ms. Bazemore, who plaintiff found to be very helpful and friendly.  Chicoine ultimately told plaintiff that he had fired Ms. Bazemore.

Plaintiff reiterated to Chicoine that she simply wanted to refinance her mortgage for a lower interest rate, and did not want to take out any cash from the mortgage.  Chicoine advised plaintiff that he could reduce her mortgage rate from 9.0% to 8.2%.  Despite this initial representation, in subsequent conversations, Chicoine stated the new interest rate as 8.24%, or as 8.42%.  After plaintiff questioned him about these inconsistencies, Chicoine confirmed to plaintiff that the new rate would in fact be only 8.2%.  Plaintiff repeatedly insisted that she would not agree to any rate higher than 8.2%.  Plaintiff also discussed with Chicoine the possibility of paying off the loan on her vehicle as part of the new mortgage.

On or about Friday, March 24, 2006, a Notary arrived at plaintiff's house with the new loan documents.  The new loan documents stated a rate of 8.62%.  Plaintiff attempted to call Chicoine regarding the rate, but he did not answer his phone.  The Notary advised plaintiff that she had four days, including the weekend, to rescind the loan, and plaintiff subsequently signed the papers.[3]  After signing the papers, plaintiff again attempted to contact Chicoine, and left a message on his personal cell phone.

On Saturday, plaintiff again left a message for Chicoine on his personal cell phone, advising him

---

[2]All of the following facts are taken from plaintiff's Second Amended Complaint, the allegations of which must be taken as true at this point in the proceedings. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)

[3]While not explicitly stated, the signing of the mortgage document on this date is inferred.

United States District Court
For the Northern District of California

1    that she was cancelling the new loan.  Chicoine returned plaintiff's call, and advised her that he would

2    work everything out by Monday.  Plaintiff reiterated that she would not sign a loan with a rate greater

3    than 8.2%.  Chicoine told plaintiff that his secretary must have made a typo when she drafted the

4    documents, and told plaintiff not to worry.  Plaintiff confirmed with Chicoine that the rate of the new

5    loan would be 8.2%, that she would receive $12,000 cash, that the loan on her vehicle would be paid

6    off, and that she would still have $100,000 in equity in her house.

7          On Monday, plaintiff again left a message for Chicoine, advising him that if she did not receive

8    papers reflecting the changes discussed, she would not accept the new loan.  Plaintiff did not hear back

9    from Chicoine on either Monday or Tuesday.  Having received no response, and being unable to contact

10   Chicoine, plaintiff advised the person who answered Chicoine's phone that she was cancelling the new

11   loan.

12         Chicoine finally called plaintiff on Wednesday, and stated that he had "found a way to give you

13   $10,000" as part of the refinance.  Plaintiff replied, "You can give me $10,000 and pay off the [vehicle

14   loan] and I will still have $100,000 equity in my home?"  Chicoine affirmed, stating "Yes.  All is as we

15   agreed."

16         Plaintiff requested that they use Chicago Title Company as the escrow agent.  Chicoine agreed.

17   Plaintiff later called Chicago Title to inquire about the escrow, and they informed her that no escrow

18   account had been established with them.  Plaintiff then called Chicoine, who informed her that he was

19   using American Title Company instead.  Chicoine subsequently informed plaintiff that the holder of the

20   new mortgage would be defendant New Century Mortgage Corporation ("New Century").  Plaintiff was

21   surprised, because she thought she had been working with Home123, and because she had previously

22   sought to refinance directly with New Century, and they had rejected her application.

23         Plaintiff ultimately received the proceeds of the new loan in her bank account, but never received

24   any revised loan documents.  Plaintiff repeatedly attempted to contact Chicoine regarding the revised

25   documents, but was never able to reach him.  Plaintiff then received her first monthly invoice from New

26   Century; she was dismayed to find that the new monthly payment was $4,054.16, approximately $700

27   more per month than the original loan.  Plaintiff renewed her fruitless attempts to contact Chicoine.

28   Plaintiff also realized at some point that Chicoine placed her in a 40 year mortgage rather than a 30 year

mortgage, without her knowledge or consent.

Plaintiff then contacted New Century, and requested that they investigate the situation.  New Century replied that Home123 would have to investigate.  Plaintiff received a letter from Home123 stating that the loan documents were proper.

On June 28, 2006, plaintiff, acting pro se, filed a complaint in Alameda County Superior Court. On October 6, 2006, the parties stipulated to removal of the action to this Court, and the filing of plaintiff's First Amended Complaint ("FAC").  On November 10, 2006, defendants moved to dismiss all six causes of action contained in plaintiff's FAC and to strike plaintiff's prayer for punitive damages. On January 18, 2007, this Court granted in part defendants' motion to dismiss and denied defendants' motion to strike.  Plaintiff then filed her Second Amended Complaint ("SAC"), the subject of the instant motion, on February 9, 2007.  Defendants now move to dismiss the first, second, third, fourth, seventh, eighth, and tenth causes of action in plaintiff's SAC.  Defendants also move to strike paragraphs (4) through (8) of plaintiff's prayer for relief.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings.  *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Because of the limited importance of pleadings in federal matters, motions to strike are generally disfavored.  *See Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  Where the motion involves background or historical material, it should not be granted unless the material is prejudicial to the opponent.  *See LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).  "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law."  *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 n.34 (C.D. Cal. 1996).

## DISCUSSION

**1.    First cause of action: intentional fraudulent misrepresentation and negligence**

According to California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage."  *Gil v. Bank of Am., Nat'l Ass'n*, 42 Cal. Rptr. 3d 310, 317 (Cal. Ct. App. 2006).  Common law claims of fraud must be pled with particularity.  *See* Fed. R. Civ. P. 9(b) ("in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity.").  Therefore, in addition to the "time, place and content of an alleged misrepresentation," a complaint "must set forth what is false or misleading about a statement, and . . . an explanation as to why the statement or omission complained of was false or misleading."  *Yourish v. California Amplifier*, 191 F.3d 983, 993 & n.10 (9th Cir. 1999).  These requirements can be fulfilled by pointing to information that was available to the defendants at the time that the allegedly false statements were made.  *See Yourish*, 191 F.3d at 993.

In its January order granting in part defendants' motion to dismiss the FAC, this Court found that the plaintiff needed to "indicate the approximate dates on which the conversations occurred and on

1  which she signed the new loan documents."  January 18, 2007 Order at 5:16-17.  Plaintiff has

2  sufficiently followed this mandate.  The SAC contains the date the notary arrived at her home, and it

3  can be clearly inferred from the rest of the allegations that the loan documents were signed on this

4  occasion.  The Court therefore DENIES defendants' motion to dismiss the first cause of action.[4]

5

6  **2.       Second cause of action: breach of the implied covenant of good faith and fair dealing**

7         Under California law, a cause of action exists for breach of the implied covenant of good faith

8  and fair dealing under both tort and contract principles.

9

10        **A.       Tort claim**

11        Every contract contains an implied covenant of good faith and fair dealing.  *Wallis v. Superior*

12  *Court*, 160 Cal App. 3d 1109, 1116 (1984).  "A tort claim for breach of the implied covenant of good

13  faith and fair dealing requires proof of a special relationship between the parties, characterized by

14  elements of public interest, adhesion and fiduciary responsibility."  *Tominaga v. Shepherd*, 682 F. Supp.

15  1489, 1498 (C.D. Cal. 1988) (citing *Seaman's Direct Buying Service, Inc. v. Standard Oil*, 36 Cal. 3d

16  752, 768-69, 206 Cal. Rptr. 354, 686 P.2d 1158 (1984)).  "[A] number of factors must be present for a

17  'special relationship' to exist:  (1) the parties are in inherently unequal bargaining positions, (2) the

18  plaintiff's motivation for entering into the contract must be a non-profit motivation (to secure peace of

19  mind, security and future protection), (3) plaintiff is especially vulnerable because of the type of harm

20  it may suffer and of necessity places trust in the defendant to perform, and (4) defendant is aware of

21  plaintiff's vulnerability."  *Id.* (citing *Wallis*, 160 Cal. App. 3d at 1118).

22        Defendants argue that as lenders they do not owe plaintiff a fiduciary duty.  Defendants contend,

23  therefore, that plaintiff cannot maintain a tort action for breach of the implied covenant of good faith

24  and fair dealing.  According to the SAC, however, defendant Chicoine is not a lender but rather a

25  mortgage broker.  *See* SAC ¶ 3.  Drawing all reasonable inferences in favor of plaintiff, this relationship

26  _____

27        [4]Defendants also argue that plaintiff has failed to sufficiently allege detrimental reliance and
damages.  The Court disposed of these arguments in its January order.  *See* January 18, 2007 Order at
28  6.

United States District Court
For the Northern District of California

gives rise to a fiduciary duty. *See Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 781-82 (1979) (affirming the decision awarding borrowers damages against appellant mortgage brokers who had breached their fiduciary duties).  However, Chicoine's oral representations to plaintiff do not constitute a "contract" in this context.  *See* Cal. Civ. Code § 1624.  Therefore, the Court finds that with respect to defendant Chicoine, plaintiff's tort claim for breach of the covenant of good faith and fair dealing is DISMISSED, with leave to amend.  If plaintiff and Chicoine entered into a written contract, she may amend her complaint to include such an allegation.

### B.    Contract claim

Under contract principles, "California law implies a covenant of good faith and fair dealing in every contract." *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989) (citation omitted). "The implied covenant imposes certain obligations on contracting parties as a matter of law -- specifically, that they will discharge their contractual obligations fairly and in good faith." *Id.* (citing *Koehrer v. Superior Court*, 181 Cal. App. 3d 1155, 1169, 226 Cal. Rptr. 820, 828 (1986)).  "A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements:  (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Garey/Philadelphia v. Yoshinoya West, Inc.*, 2006 Cal. App. Unpub. LEXIS 11533 at *1, *11-*12 (Cal. Ct. App. Dec. 21, 2006) (citing 1-300 Judicial Council of California Civil Jury Instructions 325).

In its January order, the Court ruled that "[p]laintiff has not adequately alleged how the defendants 'unfairly interfered with the plaintiff's right to receive the benefits of the contract.'" January 18, 2007 Order at 8:25.  In her SAC, plaintiff attempted to correct the problem by explaining how she failed to receive the benefit of Chicoine's *oral* representations.  *See* SAC at 19:28-20:7.  As discussed, under California law, verbal loan agreements are invalid.  *See* Cal. Civ. Code § 1624.  The Court therefore GRANTS defendants' motion to dismiss the second cause of action with respect to the contract claim, with leave to amend.  Plaintiff may amend her complaint to include how Chicoine interfered with

**United States District Court**
For the Northern District of California

1     her rights to receive benefits under a *written* contract, if there was one.

2

3     **3.**       **Third cause of action: unfair business practices**

4          Under § 17200 of the Business and Professions Code, unfair competition is defined as "any

5     unlawful, unfair, or fraudulent business act or practice . . . ." "'Because Business and Professions Code

6     section 17200 is written in the disjunctive, it establishes three varieties of unfair competition--acts or

7     practices which are unlawful, or unfair, or fraudulent.'" *Schvatrz v. Budget Group, Inc.*, 81 Cal. App.

8     4th 1153, 1159 (2000) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647(1996)).

9          Pursuant to Bus. & Prof., Code, § 17200, which defines unfair competition, the
10          "unlawful" practices prohibited are any practices forbidden by law be it civil or criminal,
         federal, state, or municipal, statutory, regulatory, or court-made. It is not necessary that
11          the predicate law provide for private civil enforcement. Section 17200 borrows
         violations of other laws and treats them as unlawful practices independently actionable.
12          "Unfair" simply means any practice whose harm to the victim outweighs its benefits.
         "Fraudulent," as used in the statute, does not refer to the common law tort of fraud, but
13          only requires a showing members of the public are likely to be deceived.

14     *Saunders v Superior Court*, 27 Cal.App. 4th 832 (1994).

15          There are two lines of appellate opinions addressing the definition of "unfair" within the
         meaning of the UCL in consumer actions. One line defines "unfair" as prohibiting
16          conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious
         to consumers and requires the court to weigh the utility of the defendant's conduct
17          against the gravity of the harm to the alleged victim. The other line of cases holds that
         the public policy which is a predicate to a consumer unfair competition action under the
18          "unfair" prong of the UCL must be tethered to specific constitutional, statutory, or
         regulatory provisions. . . .

19     *Bardin v. DamlierChrysler Corp.*, 136 Cal. App. 4th 1255, 1260-61 (Cal. Ct. App. 2006) (citations

20     omitted). "The 'fraud' prong of the UCL requires [that] 'members of the public are likely to be

21     deceived' by the challenged conduct." *Id.* at 1261.

22          As discussed above, plaintiff successfully states a claim for fraud against defendant Chicoine.

23     The allegations underlying her fraud claim are also sufficient to state a claim for violation of section

24     17200. The Court therefore DENIES defendants' motion to dismiss plaintiff's third cause of action.

25

26     **4.**       **Fourth cause of action: violation of the Home Ownership and Equity Protection Act of**

27          **1994**

28          The Home Ownership and Equity Protection Act of 1994 ("HOEPA") augmented the Truth and

United States District Court
For the Northern District of California

Lending Act with additional disclosure obligations and substantive requirements for particular high-cost mortgages. *See* 15 U.S.C. § 1602(aa), 1639. HOEPA applies to:

> a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if – (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (B) the total points and fees payable by the consumer at or before closing will exceed the greater of – (i) 8 percent of the total loan amount; or (ii) $ 400.

15 U.S.C. § 1602(aa).

In its January order, the Court ruled that to support a HOEPA violation allegation, plaintiff "must allege facts supporting a conclusion that HOEPA applies to the loan at issue, under the requirements of § 1602(aa)." January 18, 2007 Order at 10:28-11:1. Plaintiff has failed to follow the Court's ruling. Instead, plaintiff makes the conclusory statement that the loan was a "high fee loan subject to a prepayment penalty." SAC ¶ 79. The Court therefore DISMISSES her fourth cause of action, with leave to amend. Plaintiff may amend her complaint to include facts that support her conclusion that the loan at issue was a high-risk loan subject to HOEPA.

**5.     Sixth cause of action: violation of Real Estate and Settlement Procedures Act**

The Real Estate and Settlement Procedures Act ("RESPA") prevents parties from receiving money in connection with real estate settlement services for work that was not performed. *See* 12 U.S.C. § 2601(b). The regulations that implement RESPA also prohibit the collection of fees that are out of proportion with the services rendered. *See* 66 Fed. Regs. 53052 (2001).

Plaintiff alleges that the fees defendants collected were out of proportion to the services rendered because the services had no value to her. *See* SAC ¶ 85. Plaintiff offers the following reasons for this contention:

> Defendant Chicoine was not licensed as a real estate broker at the time of the loan duly licenced and registered with the California Department of Real Estate ("DRE"); (2) Defendants Home 123 and New Century Mortgage were not licensed and registered with the California DRE; the terms of the loan were misrepresented to Plaintiff so she *incurred a higher interest rate, higher mortgage payments* and the loan will incur a prepayment penalty if not paid off within two years . . . .

1    *Id*. ¶ 85:5-12 (emphasis added).

2          The Court finds that plaintiff adequately states a claim for a RESPA violation when she alleges

3    that her interest rate and payments under the loan at issue were higher than those of her original loan.

4    From these allegations, which at this point must be taken as true, it can be inferred that defendant

5    Chicoine was paid disproportionally for his services.  The Court therefore DENIES defendants' motion

6    to dismiss plaintiff's sixth cause of action.

7

8    **6.        Seventh cause of action: breach of fiduciary duty**

9

10         **A.        Negligence**

11         Plaintiff's seventh cause of action appears to assert a negligence claim against defendants.  To

12   state a claim for negligence in the state of California, a plaintiff must allege 1) a legal duty to use due

13   care, 2) a breach of said duty, and 3) the breach as a proximate cause of the resulting injury.  *See Ladd*

14   *v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).

15         Defendants argue that as conventional money lenders, they do not owe plaintiff a duty of care.

16   As discussed, however, plaintiff alleges that defendant Chicoine is a broker, not a lender.  He therefore

17   owes plaintiff a fiduciary duty, an even higher responsibility than that required under a negligence

18   claim.  *See Wyatt*, 24 Cal. 3d at 781-82.  The Court therefore DENIES defendants' motion to dismiss

19   plaintiff's negligence claim.

20

21         **B.        Breach of fiduciary duty**

22         As discussed, assuming that plaintiff's allegations are true, defendant Chicoine owes plaintiff

23   a fiduciary duty.  The Court therefore DENIES defendants' motion to dismiss plaintiff's breach of

24   fiduciary duty claim.

25

26

27

28

**United States District Court**
For the Northern District of California

10

**7.       Eighth cause of action: violation of California Civil Code sections 1920 and 1921**[5]

**A.       Section 1920**

California Civil Code section 1920 sets forth the requirements of a "mortgage instrument."  *See* Cal. Civ. Code § 1920.  Among the requirements is the mandate that lenders consider a borrower's ability to meet her mortgage obligations before they adjust interest rates and monthly payments, and that proper notice and disclosure be given to borrowers before lenders change loan rates or payments.  *See id*.  Section 1920 does not explicitly authorize a private right of action.  However, as discussed, California Business and Professions Code section 17200 authorizes a private right of action for "any practices forbidden by law be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.  It is not necessary that the predicate law provide for private civil enforcement." *Saunders*, 27 Cal. App. 4th 832, 838-39 (1994).  Therefore, plaintiff may bring a section 17200 claim based on a violation of section 1920, but cannot bring a section 1920 claim standing alone.

Plaintiff's section 1920 claim also falls short on the merits.  Plaintiff fails to allege any specific acts by defendant Chicoine that would subject him to liability under this section.  Instead, plaintiff offers the conclusory statement that defendants failed to "meet the requirement of an adjustable mortgage instrument" as set forth in section 1920.  SAC ¶ 116:21-22.  The Court therefore DISMISSES plaintiff's eighth cause of action against defendant Chicoine with respect to the section 1920 claim, with leave to amend.  Plaintiff may amend her complaint to include specific facts that would support her claim that defendant Chicoine violated this section of the California Civil Code.  If plaintiff wishes to bring a 1920 claim, she must do so within a claim for violation of section 17200 of the California Business and Professions Code.

---

[5]These sections of the California Civil Code appear to apply only to lenders.  Plaintiff alleges that defendant Chicoine is a *broker*, not a lender.  *See* SAC ¶ 3.  However, because defendants failed to raise this issue in their motion to dismiss, the Court will not address it at this time.

**B.     Section 1921**

California Civil Code section 1921 provides that any lender offering adjustable-rate residential mortgages has to provide prospective borrowers with a copy of the Consumer Handbook on Adjustable Rate Mortgages.  *See* Cal. Civ. Code § 1921.  Plaintiff does not specifically allege that Chicoine failed to provide her with this book.  Instead, plaintiff offers the conclusory statement that defendants failed to meet the "requirements for disclosure information in connection with an adjustable rate mortgage instrument as set forth in" section 1921. SAC ¶ 116:23-24.  The Court therefore DISMISSES plaintiff's eighth cause of action against defendant Chicoine with respect to the section 1921 claim, with leave to amend.

**8.     Tenth cause of action: violation of 12 United States Code section 2602**

12 United States Code section 2602 defines terms found elsewhere in RESPA.  *See* 12 U.S.C. § 2602.  It does not set forth any regulations or conduct that would give rise to a cause of action.  As such, a claim under section 2602 is not proper.  The Court therefore DISMISSES plaintiff's tenth cause of action, with prejudice.

**9.     Motion to strike**

Defendants move to strike paragraphs 4-8 of plaintiff's prayer for relief, which request restitution and disgorgement, a permanent injunction, statutory damages, a statutory fine, and punitive damages.

**A.     Restitution and disgorgement**

Restitution and disgorgement are proper prayers for relief under California Business and Professions Code section 17200.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003).  As discussed above, plaintiff successfully states a claim for violation of section 17200 against defendant Chicoine.  The Court therefore DENIES defendants' motion to strike plaintiff's prayer for restitution and disgorgement, with prejudice.

United States District Court
For the Northern District of California

**B.      Permanent injunction**

A permanent injunction is also a proper prayer for relief under California Business and Professions Code section 17200. *See People v. First Fed. Credit Corp.*, 104 Cal. App. 4th 721, 735-36 (2002). As discussed above, plaintiff successfully states a claim for violation of section 17200 against defendant Chicoine. The Court therefore DENIES defendants' motion to strike plaintiff's prayer for a permanent injunction, with prejudice.

**C.      Statutory damages**

Plaintiff requests statutory damages based on defendants' alleged violations of HOEPA. As discussed above, plaintiff has failed to state a claim for violation of HOEPA, but her failure to do so appears curable by amendment. The Court therefore DENIES defendants' motion to strike plaintiff's prayer for statutory damages, without prejudice to renewing the motion should plaintiff fail to state a claim for violation of HOEPA upon amendment.

**D.      Statutory fine**

Plaintiff requests a statutory fine based on defendants' alleged violations of 12 U.S.C. section 2602. As discussed above, there is no valid cause of action for violation of 12 U.S.C. section 2602, and her failure to do so is not curable by amendment. The Court therefore GRANTS defendants' motion to strike plaintiff's prayer for a statutory fine.

**E.      Punitive damages**

California Civil Code section 3294 allows for punitive damages where a plaintiff can prove by clear and convincing evidence that the defendants are guilty of oppression, fraud, or malice. *See* Cal. Civ. Code § 3294. As discussed above, plaintiff successfully states a claim for fraud against defendant Chicoine. The Court therefore DENIES defendants' motion to strike plaintiff's prayer for punitive damages, with prejudice.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' motion to dismiss plaintiff's Second Amended Complaint. (Docket No. 42). Plaintiff must file a third amended complaint, should she wish to do so, by April 27, 2007. The Court GRANTS IN PART defendants' motion to strike, without prejudice. (Docket No. 41).


**IT IS SO ORDERED.**


Dated: April 6, 2007

SUSAN ILLSTON
United States District Judge