LESLIE BARNES MARKS
3099 Suter Street
Oakland, CA  94602
Tel:  510/434-9758
Email:  blaqrubi@yahoo.com

Plaintiff IN PRO SE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE BARNES MARKS, In Pro Per,<br><br>Plaintiff,<br><br>v.<br><br>TOM CHICOINNE, an individual, HOME 123 CORPORATION, and NEW CENTURY MORTGAGE CORPORATION, and NEW CENTURY MORTGAGE CORPORATION dba HOME 123, and DOES, 1-100,<br><br>Defendants. | CASE NO. C06-06806 SI<br><br>**THIRD AMENDED COMPLAINT ALLEDGING INTENTIONAL FRAUDULENT AND NEGLIGENT MISREPRESENTATION; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;  UNFAIR BUSINESS PRACTICES; AND VIOLATION OF THE TRUTH IN LENDING ACT (TILA)**<br><br>DEMAND FOR JURY TRIAL<br>Original Complaint filed<br>In State Court:  July 28, 2006 |

Plaintiff, Leslie Barnes Marks alleges as follows:

**THE PARTIES AND BACKGROUND**

　　　　1.　　　Plaintiff, LESLIE BARNES MARKS, (hereafter "Marks" and/or "Plaintiff") is and at all times relevant herein is an individual and resident of the City of Oakland, California, County of Alameda. Plaintiff is, and at all timed relevant herein was, the owner of, and resided in, the single family residence located at 3099 Suter Street, Oakland, California her Primary Residence (the "Marks Property" or the "Property" or the "Primary Residence").  Plaintiff resides and has resided in her primary residence for approximately eight (8) years.

-1-
THIRD AMENDED COMPLAINT

2.    Home 123 as applied herein refers to the Home 123, Emeryville, California location, managed by Defendant, Tom Chicoine and all its agents, subsidiaries, heirs and representatives of Home 123 Corporation. (Hereinafter referred to as "Home 123".)

3.    Tom Chicoine as referred to herein refers to Defendant Chicoine as the Broker for Defendant Home 123, Home 123 Corporation and all its agents, subsidiaries, heirs and representatives. (Hereinafter referred to as "Chicoine" and/or "Broker".)

4.    New Century Mortgage Corporation as referred to herein refers to Defendant New Century Mortgage Corporation, and all its agents, representatives, heirs and subsidiaries and specifically as the current holder and/or financer of Plaintiff's Mortgage. (Hereinafter referred to as "New Century".)

5.    "Defendants" as referred to herein refer to all Defendants jointly and/or severally and/or their representatives, heirs, assigns and/or agents.

6.    New Century Mortgage Loan Number 1006788513 (1219-025) refers to the Loan which is the subject matter of this litigation. Hereinafter the "Loan" or the "Mortgage"." The payment of the Loan in excess of $4,000 per month is referred to herein as the "Loan Payment" or the "Mortgage Payment".

7.    New Century Mortgage Loan Number 10000258492 refers to Plaintiff's prior loan with New Century Mortgage, NOT obtained through Home 123, hereinafter the "Prior Loan".

8.    The "Auto Loan" refers to the loan for Plaintiff's Mercedes SUV.

9.    Defendants Doe 1 through Doe 100, inclusive, are sued in this Complaint under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Third Amended Complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges, that each of the fictitiously named Defendants are responsible in some manner for the occurrences alleged in this Third Amended Complaint, and that Plaintiff's damages as alleged in this Third

1    Amended Complaint were proximately caused by those Defendants acting in concert

2    or individually or both.

3        10.    Defendants Home 123 and New Century Mortgage is in the business of

4    sub-prime mortgage lending.  The sub-prime lending industry charges higher fees and

5    interest rates to customers who are credit risks having low credit scores or have

6    bankruptcies on their credit reports.  As sub-prime lenders, Defendants engage in acts

7    and practices targeting, soliciting and exploiting older, financially unsophisticated,

8    mostly minority, low-income, credit card or otherwise financially burdened customers.

9    Defendants acts and practices include, but are not limited to, hard-sell, aggressive, high

10   pressure, bait and switch sales tactics, deceptive sales promises about the terms of the

11   mortgage loans and the mortgage interest rate, the forging and altering of documents,

12   the falsification of appraisals, "flipping" (pushing new loans solely to generate fees and

13   commissions), charging customers excessive fees and costs, all tactics to deceive their

14   customers into signing documents, "juicing" mortgages with hidden rates and fees,

15   hyping customers' creditworthiness and fabricating customer's income (hereinafter, the

16   "Deceptive Acts and Practices").

17       11.    Plaintiff is informed and believes and thereon alleges that each of the

18   fictitiously named Defendants is legally responsible for the acts and omissions herein

19   alleged, including Deceptive Acts and Practices and that Plaintiff's damages as herein

20   alleged were proximately caused by said acts and omissions including Deceptive Acts

21   and Practices.

22       12.    Plaintiff is informed and believes, and based thereon alleges, that at all

23   times herein mentioned, each and every Defendant was acting as the agent, servant, or

24   employee of and for one or more of the other Defendants and that at all time herein

25   mentioned each and every Defendant was acting within the course and scope of such

26   agency, service or employment and with the knowledge, permission and consent of

27   each such other Defendants; and that each and every Defendant is legally responsible

28   for the conduct of each and every other Defendant.

**UNDERLYING FACTUAL ALLEGATIONS**

13.     An assignee holding or servicing an extension of mortgage credit subject to Sec. 226.32, shall not, for the remainder of the one-year period following the date of origination of the credit, refinance any loan subject to Sec. 226.32 to the same borrower into another loan subject to Sec. 226.32, unless the refinancing is in the borrower's interest.  Furthermore, a creditor (or assignee) is prohibited from engaging in acts or practices to evade this provision, including a pattern or practice of arranging for the **refinancing of its own loans by affiliated or unaffiliated creditors, or modifying a loan agreement (whether or not the existing loan is satisfied and replaced by the new loan) and charging a fee.**

14.     Defendants New Century Mortgage is in violation of Sec. 226.32. Plaintiff's Prior Loan with New Century closed within one year of the Plaintiff's current Mortgage Loan, the subject of this litigation.   Additionally, Plaintiff paid exorbitant prepayment penalty and the present Mortgage Loan supplied by New Century is NOT in the best interest or benefit of Plaintiff.

15.     Defendants as sub-prime lenders, and each of them, engaged in a pattern or practice of extending credit subject to Sec. 226.32 to Plaintiff based on the Plaintiff's collateral without regard to Plaintiff's repayment ability, including the consumer's current and expected income, current obligations, and employment. There is a presumption that a creditor has violated this paragraph (a)(4) if the Defendants engage in a pattern or practice of making loans subject to Sec. 226.32 without verifying and documenting consumers' repayment ability (Deceptive Acts and Practices).

16.     It is noteworthy that Defendants claim Home 123 Corporation, NOT New Century Mortgage is the holder of Plaintiff's Mortgage.  Plaintiff attached hereto as Exhibit "A" a true and correct recent copy of Plaintiff's current Mortgage statement and payment voucher.  The Mortgage statement clearly shows the holder of Plaintiff's Mortgage is Defendant New Century Mortgage.  If Defendant Home 123 is the mortgage holder Plaintiff's should have been so advised, she was not, until the

1   commencement of this litigation.   Furthermore, Defendant Chicoine distinctly told

2   Plaintiff he "found a bank" to finance her.   Defendant Chicoine did not, at any time,

3   advise Plaintiff that Defendants Home 123 and New Century were acting as both

4   Broker and Lender in the Mortgage transaction.

5                           **GENERAL FACTUAL ALLEGATIONS**

6           17.     Plaintiff is informed and believes and based thereon alleges that Defendants

7   Tom Chicoine, Home123 Corporation and New Century Mortgage Corporation dba Home

8   123 (hereafter, the "Defendants", or, together with DOES 1 - 100, **"Defendants"**) are jointly and

9   severally are responsible for allowing/enabling/supporting Defendant Chicoine – Mr. Chicoine

10  acting as the broker/agent for Defendant Home 123 AND broker/agent for Defendant New

11  Century Mortgage  - to defraud Plaintiff of the Primary Residence by falsifying documents to

12  qualify Plaintiff a Loan Defendants, and each of them,  were well aware Plaintiff could not afford

13  to satisfy for even a small portion of the duration of the Loan contract.  Defendants were aware

14  that Plaintiff could not afford to maintain such a Mortgage and/or Mortgage Payment which

15  would result in Plaintiff's loss of ownership of the Primary Residence.   Plaintiff believes

16  Defendants accomplished this by falsifying information in the loan application, without complete

17  disregard for Plaintiff's ability to repay the Mortgage including Deceptive Acts and Practices.

18  Defendants and each of them, denied Plaintiff the right to (1) rescind the Loan which Plaintiff

19  verbally and repeatedly requested during the required period, resulting in Plaintiff's being

20  unjustly and illegally qualified for an economically burdensome Mortgage on her Primary

21  Residence - violating and/or ignoring Plaintiff's right to rescind the loan during the rescission

22  during period; (2) unjustly qualifying Plaintiff for an economically burdensome Mortgage

23  Payment, with total and complete disregard for her ability to repay the monthly Mortgage

24  obligation, or the monthly Mortgage Payment utilizing Deceptive Acts and Practices.

25          18.     On or about February 7, 2006, Plaintiff contacted Home123.com and

26  spoke with a Home 123, employee named Meosha Bazemore.   Plaintiff advised Ms.

27  Bazemore that Plaintiff simply desired to refinance the Property simply for a mortgage

28  with lower interest rate which would reduce her mortgage payment and leave $150,000

worth of equity in the Primary Residence.  Plaintiff took a professional liking to Ms. Bazemore as she was very professional and did everything in her power to secure a refinance package for Plaintiff, with the perimeters Plaintiff desired.  However, Ms. Bazemore advised Plaintiff that she was NOT a broker.  Ms. Bazemore further advised Plaintiff that she was in the business of helping homeowners secure loans and NOT defrauding them or taking advantage of them.  For this reason, Plaintiff made several refinance related inquiries regarding the principals and how mortgage loans are approved or denied, what are specific qualification, etc.  Ms. Bazemore had to refer several questions to Defendant Chicoine her then Supervisor and who she represented was a Broker (and who later represented himself as a Broker directly to Plaintiff), to respond to Plaintiff's questions about refinancing and mortgages.  Plaintiff is informed and believes these inquiries alerted Defendant Chicoine the Plaintiff was "financially unsophisticated" in the area of mortgage refinancing.

19.    Ms. Bazemore advised Plaintiff that it did not seem promising that Ms. Bazemore could secure a loan for Plaintiff because of Plaintiff's income, credit score which was below 600.   Ms. Bazemore explained that the equity in the Primary Residence would be diminished and could not meet the perimeters Plaintiff desired.

20.    On or about 6, 2006, Plaintiff advised Ms. Bazemore that her home had been recently appraised at close to $600,000.   Plaintiff advised Ms. Bazemore that Plaintiff had been solicited by an employment agency about job opportunities that would pay approximately $12,000 annually more than Plaintiff was currently earning.  Plaintiff had not been seeking new employment at the time an opportunity simply fell into her lap.  Plaintiff explained that if she could get her the Auto Loan paid off, take no cash out of the refinanced mortgage and reduce her interest rate; Plaintiff could comfortably afford her monthly obligations.  Ms. Bazemore stated that she would have to consult her manager, Defendant Chicoine for advice regarding this new information.

21.    On or about March 7, 2006 thru March 10, 2006 for a few days following Plaintiff's disclosure, Ms. Bazemore, who was generally available to speak with Plaintiff

was suddenly "unavailable".  Plaintiff was advised by other employees of Home 123 (Emeryville, CA location) that Ms. Bazemore: 1. "had a flat tire on the freeway; 2. "had a family emergency"; 3. was "out to lunch" and 4. "called in sick" and several other unprofessional excuses why Ms. Bazemore could and did not return Plaintiff's telephone calls.  Excuses which seemed totally out of character for Ms. Bazemore, who appeared to go out of her way to explain the mortgage and refinance process to Plaintiff, favorable or not to Plaintiff's desires.

22.     Plaintiff never spoke to Ms. Bazemore again.  On or about March 13, 2006 Plaintiff began receiving calls from Defendant Chicoine, calls which, Plaintiff initially did not respond to.

23.     On or about March 13 through March 15, 2006 Defendant Chicoine left numerous messages on Plaintiff's home phone, work phone, cell phone and email.  On or about March 13, 2006 Defendant Chicoine came out to Plaintiff's Primary Residence and left his business card in the door.  Defendant Chicoine again left his Home 123 Business cards on the Property on or about March 15, 2006, two separate occasions.

24.     On or about March 17, 2006 Plaintiff returned a called Defendant Chicoine and expressed that Plaintiff only wanted to do business with Meosha Bazemore.  Defendant Chicoine advised Plaintiff that Ms. Bazemore left his firm for another position.  Defendant Chicoine later advised Plaintiff that Ms. Bazemore was "unprofessional" and with all her problems arriving to work, he had to let her go.  Stating that she was NOT a Broker, he was.  Plaintiff clearly reiterated exactly what was expressed to Ms. Bazemore that Plaintiff simply wanted a lower interest rate and a more comfortable mortgage payment.  Plaintiff did not want to take out cash.  Defendant Chicoine admitted to discussing Plaintiff's questions and concerns with Ms. Bazemore prior to her departure.  Defendant Chicoine claimed he had performed "hundreds" of loans for individuals with credit problems and low credit scores.  Defendant Chicoine assured Plaintiff he could help her and refinance the Primary Residence for the interest rate Plaintiff desired and the terms Plaintiff desired and that Ms. Bazemore

(unbeknownst to Defendant Chicoine – he claimed) lacked the knowledge and experience to service Plaintiff in the manner in which was required.

25.     Plaintiff was informed and believes that during the time of her loan negotiations her credit score was approximately 530 or lower.  Plaintiff is informed and believes that her then credit score at the time of the transaction is considered "low" in the real estate refinancing business.  Plaintiff reasonably relied on Defendant Chicoine's "experience" with "hundreds" of loans to guide her in this regard.

26.     Defendant Chicoine seemed friendly and conversations between Plaintiff and Defendant Chicoine often went off the topic of refinancing.  For example, on or about March 17, 2006 Defendant Chicoine told Plaintiff that he was ranked No. 125 in the world as a tennis player and recently was moved up to number 25, or some similar ranking.  Plaintiff told Chicoine that her 11 year old recently began having seizures and she was trying out stand-up comedy.  Defendant Chicoine even said he would come to an upcoming performance.  Plaintiff advised Defendant Chicoine that she had been a legal secretary for 25 years.  Plaintiff also advised Defendants Chicoine that she was a Notary Public and was taking the loan signing agent course.  Plaintiff sadly realizes now that these conversations were to gain Plaintiff's "confidence" , for the purposes of effecting Deceptive Acts and Practices.  Similar to a "con man", Defendant Chicoine successfully gained Plaintiff's trust and confidence.   Plaintiff truly felt Defendant Chicoine was working to successfully refinance the Property at a lower more comfortable rate.

27.     Returning to the subject of the refinance, on or about March 20, 2006 Defendant Chicoine advised Plaintiff that he could only reduce the mortgage from 9.0 to an 8.2 interest rate.  Defendant Chicoine stated that that would not lower Plaintiff's mortgage payment by much, but without the burden of the Auto Loan payment, mortgage payments would be easier for Plaintiff. Emphasis being LOWER monthly payments, the retention of equity and the payoff of the Auto Loan.  Defendant Chicoine stated that paying off Plaintiff's Auto Loan would allow Plaintiff have a bit more cash to

work with to successfully pay the new lower mortgage.   Defendant Chicoine acknowledged that if Plaintiff was successful in getting the new job that would also make the new LOWER payment more comfortable.   Defendant Chicoine also said Home 123, Emeryville, CA office would provide Plaintiff with clients as a Loan Signing Agent.   Defendant Chicoine stated that Home 123 paid notaries $200 per signing easily earning more than "$1000 per month" of additional income.   Plaintiff advised Defendant Chicoine that she could sign loan documents as a Notary, but she wanted to be a Certified Loan Signing Agent.   Defendant Chicoine, prior to the Loan closing, requested Plaintiff keep her Notary supplies with her as Defendant Chicoine had a client for Plaintiff to sign in San Francisco and wanted her to be ready on a moments notice. However, Defendant Chicoine's client was in the hospital and Defendant Chicoine wanted Plaintiff ready to go when Defendant Chicoine notified her perform a Loan Signing job.   Plaintiff now believes even this was simply a rouse (Deceptive Acts and Practice) to keep Plaintiff from paying attention to the details of the Loan process, interest payments and terms and conditions. Defendant Chicoine's deceptive methods included telling Plaintiff that even five (5) loan signings a month would be an extra $1,000 worth of income – each signing paying $200.   Plaintiff' believed Defendant Chicoine, based on their numerous conversations and had "confidence" to take his word as given.   To date, Defendant Chicoine, nor Defendant Home 123, have not provided Plaintiff with a single notary assignment of any kind.

28.    On about or during the week of March 21, 2006 thru March 24, 2006 Defendant Chicoine began calling Plaintiff and verbally changing the loan rate during their conversations (Deceptive Acts and Practices).   Plaintiff advised Defendant Chicoine during those conversations that Plaintiff WOULD NOT DO THE LOAN if the rate was more than the agreed upon 8.2%.   Defendant Chicoine then would call and tell Plaintiff the rate was 8.24% then Defendant Chicoine would say 8.42% in the same conversation - Deceptive Acts and Practices.   When Plaintiff questioned Defendant Chicoine about these "verbal changes", Defendant Chicoine would and did verbally confirm the rate of Plaintiff's loan as "8.2%".   Defendant Chicoine then stated that he

was quoting the rate of another client, as he had so many pending deals this was an "honest mistake". The final loan interest rate was 8.62% which Plaintiff did NOT agree to. Plaintiff was clear, insistent and reiterated that she would NOT do a Loan for an interest payment of more than the agreed upon 8.2%. Plaintiff made this a clear and definitive point as a deal breaker throughout the loan negotiation process, constantly and during each and every conversation with Defendant Chicoine prior to the loan signing.

29.     Plaintiff is now informed and believes that Defendant Chicoine terminated Ms. Bazemore's employment so she could not receive any commission on the loan and/or to keep Ms. Bazemore from advising Plaintiff against taking the proposed loan. Defendant Chicoine initiated his plan (Deceptive Acts and Practices), with the approval/support of his employer Defendant Home 123 and/or the finance company Defendant New Century Mortgage to defraud Plaintiff of the Primary Residence by qualifying her for the economically burdensome loan. Defendant Chicoine illegally qualified Plaintiff for an economically burdensome mortgage that Plaintiff's then current income clearly did not support. If allowed to prevail in this litigation Defendants and each of them, will successfully and continue to violate the law, and render Plaintiff and her handicapped child homeless. Additionally, Defendants and each of them remain unjustly enriched as the direct and proximate result of the Deceptive Acts and Practices.

30.     Defendants Home 123 and New Century, by illegally and fraudulently allowing Defendant Chicoine to place Plaintiff in the economically burdensome mortgage, which Plaintiff later learned depleted the equity in the Property. Defendants accomplished this by allowing Defendant Chicoine to falsify documents to "qualify" Plaintiff for the Loan. Defendants Home 123 and New Century Mortgage failed to "verify" Plaintiff's qualifications for the loan.

31.     On or about March 24, 2006 a Notary, provided by Defendants Chicoine and Home 123 arrived to Plaintiff's home for the loan signing. Plaintiff noticed the figures in the documents were not what Plaintiff and Defendant Chicoine agreed upon. Additionally, Plaintiff did not see the impound account information and Plaintiff did not

see where the Auto Loan would be paid.  The documented interest rate was in excess of 8.62% - all things Plaintiff did not agree to.  Plaintiff repeatedly advised Defendant Chicoine several times that if the rate was NOT 8.2% there was no deal, the Loan was cancelled, even prior to the signing of the loan documents.  Plaintiff called Defendant Chicoine on his personal cell phone, in the presence of the Notary and again on March 25, 2006.  The next day which was a Saturday, to inform him that the Loan was CANCELLED.  Only then did Defendant Chicoine return Plaintiff's call.

32.   During this call, on or about March 25, 2006 Defendant Chicoine became bit excited or agitated and claimed we would have all the bugs worked out by Monday, which date would be on or about March 27, 2006, well within the rescission period. Defendant Chicoine claimed we would have to completely redo the loan documents from scratch if Plaintiff cancelled, and it was quite possible nothing could be done for her.  It had been difficult for him to "find a bank" and Defendant would have to begin the process again.  Defendant Chicoine stated that the documents did NOT have to be resigned, just revised.  Plaintiff again reiterated that that she would NOT do the loan for more than the agreed upon 8.2%.  Defendant Chicoine stated that his secretary must have made a typo on the documents and assured Plaintiff not to worry.  Needless to say, Plaintiff could not get in touch with Defendant Chicoine before the rescission expiration date.  Defendant Chicoine NEVER advised Plaintiff during this conversation that if she still wanted to rescind the loan, Plaintiff should simply put this request in writing and fax or email it to Defendant's place of business BEFORE the rescission period.

33.   Plaintiff called Defendant Chicoine on Monday and Tuesday (March 27, 2006 and March 28, 2006).  Plaintiff received no response from Defendant Chicoine. Plaintiff then advised the representative of Home 123 who answered the phone that he should immediately advise Defendant Chicoine that the Loan was CANCELLED. Plaintiff advised this person that the last day to cancel was Wednesday and that since Chicoine had not forwarded documents, the Loan was CANCELLED.   Neither Defendant Chicoine, nor the representative of Defendant Home 123 advised Plaintiff, at that moment, that in order to rescind the loan it must be in writing.

34.     Plaintiff then received a call from Defendant Chicoine on or about March 29, 2006.  Defendant Chicoine stated that he "found a way to give you $10,000" in this refinance."    Plaintiff again immediately requested confirmation: "You can give me $10,000 AND pay off the Auto Loan and I will STILL have $150,000 equity in my home?"   Chicoine replied "Yes.   All is as we agreed."   Plaintiff advised Defendant Chicoine that she has ALWAYS in every loan had an impound account.   Plaintiff also requested Chicago Title Company as the escrow agent.   Initially, Mr. Chicoine said he would use Chicago Title.   On or about March 29, 2006, Plaintiff called her contact at Chicago Title Insurance Company and was advised there was no escrow account established.   Plaintiff again called Defendant Chicoine who advised Plaintiff that he uses North American Title Company.   Plaintiff is informed and believes his or one of his female acquaintances was employed by North American Title at this time.   She advised me she is "*very good" (emphasis added)* friends with Defendant Chicoine.   Plaintiff attempted to verify her name, which Plaintiff believes her first name is "Susan", however, when Plaintiff called to inquire about this person, her accounts were "taken over" by a Manager at the title Company whose name Plaintiff is informed and believes to be Rich Schmuhl.

35.     On or about March 29, 2006 Plaintiff was then advised by Chicoine that her new mortgage company was New Century Mortgage Corporation – NOT Home 123 (Deceptive Acts and Practices).  Plaintiff was surprised that the financing institution was Defendant New Century Mortgage.   Plaintiff had contacted them directly prior to contacting Defendant Home123.com, and Plaintiff was turned down for a loan via online application by New Century on or about February 15, 2006.  Plaintiff mentioned this fact to Defendant Chicoine, who claimed Defendant New Century was his parent company and he did not know why Plaintiff was turned down by Defendant New Century.  Plaintiff informed Defendant Chicoine that she had Prior Loan with New Century that she successfully paid off, and wondered why they turned her down.   Defendant Chicoine claimed that Defendant New Century turns down all loans online.

36.     On or about March 30, 2006 Plaintiff then received the proceeds of the loan in her bank account and called Defendant Chicoine to find out about the loan

documents.  Plaintiff never received the revised documents from Defendant Chicoine. Defendant Chicoine never returned telephone calls from Plaintiff for ANY reason after the Loan closed.  Defendant Chicoine did not respond to email, cell phone, and work phone. Nothing.  To date, Plaintiff has not spoken to Defendant Chicoine since the closing of the loan.

37.     On or about April 20, 2006 Plaintiff was shocked and angered when she received her first invoice from New Century Mortgage Company, charging monthly payment was $4,054.16, approximately $700 MORE per month than the original loan. Plaintiff, again constantly and continually called Defendant Chicoine to no avail.

38.     On or about April 20, 2006 Plaintiff contacted the holder of the Auto Loan and was further advised that the Auto Loan was NOT paid.

39.     On or about April 20, 2006 Plaintiff contacted Defendant New Century who advised Plaintiff that Defendant New Century Mortgage Corporation was the parent company of Defendant Home123.com, and Defendant Home123.com would have to investigate the matter.  Plaintiff also requested Defendant New Century to do an investigation, and never received a response from Defendant New Century Mortgage. To date, Plaintiff has never heard from Defendant Chicoine again. Plaintiff received a letter from Defendant Home123.com stating that there was nothing improper about the loan documents or process.  A copy of this letter is attached hereto as "EXHIBIT B." Defendant Chicoine also put Plaintiff in a 40 year mortgage not the customary 30 year mortgage.  A copy of a current New Century Mortgage statement is attached hereto at Exhibit "A".

40.     Defendants, through their counsel Brian Gunn, since the inception of this litigation now claim that the correct name of Home 123 is "New Century Mortgage dba Home 123".  However, Defendant's Chicoine's Notice of Acknowledgement and Receipt filed with the Alameda County Superior Court, states "Home 123 dba NCMC" (New Century Mortgage Co.) in his own hand.  A true and correct copy of this document is attached hereto as Exhibit "C."

41.     Plaintiff discovered that NO Defendant in this action was licensed by the Department of Real Estate at the time of this transaction.  In the State of California all

real estate agents and brokers must be licensed and must register with the Department of Real Estate and maintain active membership.  See Exhibit "D".

42.    On or about April 20, 2006 Plaintiff requested copies of the original loan documents including the documents that determined her qualification for the Loan from Defendant New Century Mortgage Co., who referred her to Defendant Home 123. Plaintiff requested the same document copies of the original Loan documents and the documents that determined her qualification for the Loan from Defendant Home 123 who referred Plaintiff to the North American Title Company.  Plaintiff requested copies of the loan documents from North American Title Company and was only provided with the disbursement papers and referred Plaintiff back to Defendant Home 123 for copies of her original loan documents.  Exhibit "E" are true and correct copies of documents Plaintiff received from North American Title Company.  To date Plaintiff has NO copies of her original Loan documents.  Attached hereto as Exhibit "F" are true and correct copies of the Prior Loan with New Century Mortgage, documents obtained online from Defendant New Century's Website, on December 27, 2006.

43.    On or about March 30, 2006 Defendants New Century Mortgage, Home 123, Home 123 dba New Century Mortgage or New Century Mortgage dba Home 123 issued a loan for an amount of approximately $495,000, approximately one-half million dollars.  Defendant Chicoine did not refinance this mortgage.  Defendant New Century Mortgage refinanced the mortgage.  Plaintiff believes that any reasonable Mortgage company has a fiduciary duty, if not a duty to itself, to verify that the mortgagee qualifies for the amount requested and has income sufficient to sustain such a mortgage. Neither Defendant Home 123 nor Defendant New Century Mortgage took such actions. Plaintiff believes these actions were not taken as all named Defendants were in consent the end result was to steal Plaintiff's Primary Residence utilizing some or all Deceptive Acts and Practices.

44.    On or about November, 2004 Plaintiff initiated the Prior Mortgage with Defendant New Century Mortgage.  Plaintiff was working for the same employer making a slightly larger income during the commencement of both Defendant New Century loans.  Defendant New Century Mortgage had prior knowledge of Plaintiff's income.

Defendants were aware that she had not actually earned extra income as they had not provided her with a single loan signing job.  Defendants were aware Plaintiff could not make the Mortgage Payment AND the payments due on the Auto Loan.

45.     Defendants paid a creditor known as "American Agencies" a sum of or in excess of $4,000 without Plaintiff's permission as Plaintiff advised Defendant Chicoine that there was a dispute and Plaintiff did not believe she owed this amount.  Plaintiff was not even certain what exactly this Debt was incurred for.  Without further discussing this matter with Plaintiff's or seeking to discover if the amount could be reduced or resolved outside of the loan process, or otherwise eradicated, Defendants made this payment to this company.  See, Exhibit E.

46.     Plaintiff is informed and believes that the Mortgage Loan contains a yield spread premium, the interest on her loan was increased and included a prepayment penalty and that as a result of such increased interest rate and prepayment penalty Plaintiff has suffered the damages, which are outlined in this Third Amended Complaint. Plaintiff is informed and believes that she incurred a "broker processing fee".  As no Defendant is registered with the Department of Real Estate, this fee is excessive.

47.     Plaintiff is informed and believes that the Mortgage Loan is approximately $150,000 more than the Good Faith Estimate.  Exhibit G, is a copy of the Good Faith Estimate provided by Defendant Home 123 on or about February 28, 2006.

**FIRST CAUSE OF ACTION**
**Intentional Fraudulent Misrepresentation and Negligent Misrepresentation**

48.     Plaintiff re-alleges and fully incorporates by reference the allegations of Paragraphs 1 through 47 of this Third Amended Complaint as though fully set forth herein.

49.     Plaintiff believes during the period of March 13, 2006 to March 30, 2006 thru the loan closing Defendant Chicoine had no intention of honoring the doctrine of good faith and fair dealing - including the termination of Ms. Meosha Bazemore to cheat Ms. Bazemore out of any commission or any financial fee/commission/gain Ms. Bazemore may have been entitled to if the loan was approved.  Defendants, and each of them, were unjustly monetarily enriched in the Mortgage transaction utilizing Deceptive Acts and Practices.  Plaintiff believes Defendant Chicoine's actions were

approved by his employer Defendant Home 123 and Defendant New Century mortgage. Defendant Chicoine claimed to have completed "hundreds" of these deals.  Plaintiff now believes this means Defendants have successfully defrauded "hundreds" of clients.  As Defendant Chicoine is not personally financing the loans, his underwriters, parent bank or employer had to be aware of his activities and support them.  Defendants Home 123 and Defendant New Century had a duty to confirm or verify the content of the application prior to issuing a loan of close to $500,000.  Plaintiff believes Defendants and each of them, were unjustly enriched and profited by their fraudulent actions.

50.     Defendants Home 123 and Defendants New Century Mortgage allowed Defendant Chicoine to operate as a broker, quoting interest rates, without a valid and active license from the California Department of Real Estate or with no Defendant being registered with the Department of Real Estate at the time this mortgage loan was finalized.

51.     Defendant New Century not only operates with out a valid and active license from the California Department of Real Estate at the time this mortgage loan was finalized, Defendant New Century DECLINED Plaintiff a loan for a lesser amount on or about $350,000 and amazing approved Plaintiff for a larger loan ($495,000) loan within 60 days.

52.     Plaintiff's online application could not include the financial representations of income stated by Defendants Home 123 or Defendant Chicoine.  Plaintiff's credit score was below 600, Plaintiff believes her credit score to be at or below 530 at the time of the Mortgage negotiations, prior to and at the closing of the loan.   Therefore, Defendant New Century Mortgage DENIED Plaintiff a loan via an online application.

53.     Plaintiff was employed by the same employer from December 2003 to April, 2006.   Both loans were approved and closed while Plaintiff was earning approximately $60,000 per year.   Defendant New Century Mortgage was ALSO aware and has possession of financial documentation from the Prior Loan.  Plaintiff was legal secretary and it should have been fairly simple for Defendants New Century and Home 123 to verify income provided by Defendant Chicoine.  Plaintiff's credit scores were well

below 600, which in itself, would not qualify for a mortgage amounting to approximately $500,000.

54.    Plaintiff believes Defendant Chicoine acting as agent  and broker for Defendant Home 123 AND agent and Broker for Defendant New Century prepared the loan application.   Plaintiff is informed and believes that Plaintiff loan application information was illegally, fraudulently, and without her knowledge or approval of the contents of those documents, Defendants caused and approved the loan application. Plaintiff is informed and believes that all Defendants and each of them worked in concert to defraud Plaintiff of the Primary Residence. (Deceptive Acts and Practices)

55.    Defendants Home123.com and New Century Mortgage accepted Defendant Chicoine's inflated income figures to approve Plaintiff for a monthly Mortgage obligation of $4,053 per month – as they had on "hundreds" of other sub-prime applications - an economically burdensome mortgage loan Plaintiff could NEVER qualify for, especially, since Plaintiff's Chapter 13 Bankruptcy discharged approximately two years ago and still showed on Plaintiff's credit report.  While Plaintiff's employer stated Plaintiff's salary at $64,000, on Plaintiff's 2005 tax return Plaintiff's income was only approximately $58,000.  Plaintiff's credit scores were well below 600.  Defendants were aware of this information prior to approving the Mortgage.  Defendants violated the covenant of good faith and fair dealing by approving the Loan without confirming Plaintiff's income and verifying that Plaintiff COULD actually afford to make the monthly payments of the Loan, even for a reasonable short term.

56.    Defendant New Century had to know Plaintiff could not make such mortgage payment in excess of $4000 as well as her regular home utilities, the payment of her SUV and other necessary living expenses.  In order to qualify for a refinanced loan payment of $4,000 Plaintiff would have to earn in excess of $100,000 per year.  A mark Plaintiff has not yet met.  Additionally, Defendant New Century had previously refinanced Plaintiff within a two year period.

57.    On or about March 30, 2006 Defendant Chicoine and Home 123, with the approval of New Century Mortgage, jointly and severally, misrepresented the value of the property, misrepresented the interest rate, misrepresented the payment of the SUV.

Plaintiff would not have agreed to the loan if she was NOT misled by the Defendants, and each of them.   Defendant Chicoine claimed the Property was appraised at $655,000, by the appraiser provided by Defendant Home 123 and Defendant Chicoine. On the Loan documents, the value was stated at $555,000, effectively depleting the equity from the property.   Plaintiff requested a copy of the Appraisal from Defendant Chicoine and to date has not received a copy of that appraisal.

58.   Plaintiff has learned in the course of research of this matter, that Real Estate Appraisers also have to be licensed and cannot at this time confirm that the appraiser, provided by Home 123, through Defendant Chicoine was, in fact, a legally licensed real estate appraiser at the time of the Loan.

59.   Defendants and each of them have a fiduciary duty, to the public to provide honest, fair reasonable home loans.  Plaintiff discovered no Defendant was a current active member of the California Department of Real Estate, see Exhibit "D".

60.   The above described failure to provide Plaintiff with copies of the signed Promissory Note and Deed of Trust to reflect the true intent of the parties resulted from Defendant's false representation to Plaintiff that the above-mentioned Promissory Note would embody their actual agreement.  Without knowledge of the true facts and in reliance on Defendant's false representations, Plaintiff was deceived and misled into signing a writing that differed materially from the prior oral and written understanding of the parties.  Plaintiff's reliance on Defendant's false representations that the written Promissory note would conform to the parties' intended agreement and was reasonable and justified.  Plaintiff was obligated under duress to execute the Promissory Note with the understanding that it would be replaced.

## SECOND CAUSE OF ACTION
### (Breach Of The Implied Covenant Of Good Faith And Fair Dealing)

61.   Plaintiff re-alleges and fully incorporates by reference the allegations of Paragraphs 1 through 60 of this Third Amended Complaint as though fully set forth herein.

62.   Defendant Chicoine claimed he and Defendant Home123.com made no money on Plaintiff's refinance.  In fact, by defrauding Plaintiff, Plaintiff is informed and believes Defendant Chicoine and Defendant Home 123 received monies well in excess of $10,000.  Plaintiff could not determine the EXACT amount as she was never provided

with the final Loan documents.  Chicoine attempted to "pad" Plaintiff's income by claiming that Home 123 would provide her with many "loan signing agent" jobs that paid approximately $200 each, Deceptive Acts and Practices.  Additionally, by placing Plaintiff in a 40 year mortgage, Defendants and each of them were further unjustly enriched.

63.     Defendants have depleted the equity in the Primary Residence leaving approximately $45,000 of equity in the Property, after reiterating and verbal confirmation that the Property was worth $655,000 – which would leave equity of $150,000 in the property, on the loan documents Defendant Chicoine claimed the Property is worth $555,000 – effectively depleting the equity from the Property.  Defendant Chicoine acting as representative of Defendant Home 123 intentionally relayed an inflated value of the Property.  Defendant Chicoine acting as representative of Defendant Home 123 deliberately and intentionally falsified the income of Plaintiff and intentionally and deliberately instructed employees of Home 123 to ignore her calls during the 3 day rescission period and at all times thereafter.

64.     Defendants, and each of them, interfered with Plaintiff's right to receive the benefits of the contract by placing her in an economically burdensome mortgage. The benefits of the contract in this instant case would include: Plaintiff being in a mortgage that is not economically burdensome.  There would be $150,000 worth of equity in the Primary Residence, her Auto Loan would be paid in full.  Plaintiff would still be gainfully employed.  Had Defendants acted as agreed, Plaintiff would have no reason to bring this matter to bar.  Defendants, and each of them, Deceptive Acts and Practices directly resulted in Plaintiff's failure to receive the fruits of the contract and peace of mind.  The threat of losing Plaintiff's home and the real possibility of becoming homeless with her family was the result of Defendant's Deceptive Acts and Practices.

65.     Plaintiff was CLEAR she did NOT want to "profit" or "monetary gain" from this refinance.  Plaintiff's desire was to secure a lower interest rate, pay off an Auto Loan, which would allow her peace of mind (her ability to sustain the mortgage payments would have been comfortable), security and future protection (the threat of foreclosure and homelessness would have been non-existent) her primary residence

1
2
3
4
5
6

would have been secure.   Plaintiff especially vulnerable because she relied on Defendants to honor the terms agreed upon.  Plaintiff will suffer severe and has suffered irreparable harm as a direct result of Defendants failure to act in good faith and Defendants Deceptive Acts and Practices.  Defendants, and each of them, were aware of Plaintiff's inability to financially and successfully sustain an economically burdensome mortgage.

7
8
9
10
11
12
13

66.    Defendants, including the promissory note and deed of trust, imposed Defendants, and each of them, a covenant of good faith and fair dealing in performing the terms and condition of the Mortgage Loan and carrying out its purpose and intent. Defendants Deceptive Acts and Practices actions clearly breach the implied covenant of good faith and fair dealing when Defendants inflated Plaintiff's income, failed to take any steps to verify any of the information contained in the Loan Application and fraudulently qualified her and placed her in a burdensome mortgage utilizing Deceptive Acts and Practices.

14
15
16
17
18
19
20
21
22
23

67.    Defendants Home 123 and Defendant New Century Mortgage is a creditor pursuant to 15 United States Code Section 1639 and Regulation Z and made the Mortgage Loan in violation of said statute as follows: the Mortgage Loan is a high-fee loan subject to a prepayment penalty; Defendants, and each of them, disregarded the ability of Plaintiff herein to repay the loan; based on information and belief, Defendants failed to deliver Plaintiff the required documents and Plaintiff was overcharged for closing costs and related fees, which Defendants 1. failed to disclose to Plaintiff and 2. fees which no Defendant is entitled to as no Defendant was a current and active member of the DRE during the entire process of the loan negotiation thru closing.  As such, Defendant Chicoine illegally quoted interest rates to Plaintiff.

24
25
26

68.    California law imposed on real estate agents, as fiduciaries, the same obligations of undivided service and loyalty as it imposes on a trustee in favor of a beneficiary.

27
28

69.    Defendants, and each of them, owed Plaintiff a fiduciary duty of utmost loyalty, good faith and diligence.  Defendants, and each of them, breached  these duties by inter alia (a) misleading Plaintiff to believe that the interest rate on her loan would be

lower the it ultimately was; (b) failing to fully explain the terms of the loan transaction to Plaintiff (example: failing to disclose that failure to make the first payment would result in immediate foreclosure; failing to disclose that paying off the Auto Loan is the same as taking cash from the loan among other things); inducing Plaintiff to sign loan documents by misrepresenting the terms and failing to disclose the terms; (c) charging a yield spread premium.

70.    Defendant Chicoine and Plaintiff had many email communications via email regarding this loan.   At the time, most communications were made during business hours from Plaintiff's then work computer.   Plaintiff has contacted her former employer in an attempt to obtain these written communications, but they had been destroyed upon her leaving employment.

71.    Defendant Chicoine's computer, which would or should contain such written communications are assumed lost as a result of the closing of the Home 123 location in Emeryville.

72.    Plaintiff contends that written email communications with Defendant Chicoine, if recovered, would prove that the terms agreed to between Plaintiff and Defendant were NOT or remotely accurately reflected in the resulting mortgage loan, which is the subject of this litigation.   Defendant Chicoine emailed the rate at 8.2 the terms of 30 years and the mortgage payment would be considerably less than $4054.per month.

73.    Plaintiff alleges that the email communications which reflected the interest rates, terms of the loan and were in fact written agreement of what the resulting mortgage loan should have reflected.   It was not.

74.    Defendants knew their representations were false at the time they were made in reckless disregard to the truth.

75.    Defendants intended that Plaintiff rely on their misrepresentations.

76.    Plaintiff reasonably relied on Defendants misrepresentations.   As a proximate result of the reasonable reliance on Defendant's misrepresentations, Plaintiff's sustained damages in an amount to be proved at trial but not yet ascertained.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD CAUSE OF ACTION
### (Violation Of California Business And Professions Code Section 17200, et seq.)

77.     Plaintiff re-alleges and fully incorporates by reference the allegations of Paragraphs 1 through 76 of this Third Amended Complaint as though fully set forth herein.

78.     There is absolutely no way that Plaintiff could qualify for a monthly payment of $4,052.00.  Plaintiff's annually income would have to be over $100,000 per year.  Defendant Chicoine was well aware that Plaintiff's new employer would pay her an annual salary of $71,000. Plaintiff's credit scores were too low to sustain a loan for $495,000.

79.     Plaintiff is informed and believes and beginning at an exact date unknown to Plaintiff, but at least since March 30, 2006, Defendants, and each of them, have committed acts of unfair business practices, as defined by California Business and Professions Code Section, 17200, et seq., by engaging in acts and practices which include, but are not limited to Deceptive Acts and Practices as alleged above and further including, but not limited to, making loans based on borrower information which Defendants, and each of them, knew or should have known to be false, inaccurate or incorrect; making the Mortgage Loan without confirming or verifying Plaintiff's information; making loans without providing the Plaintiff with sufficient, accurate  and understandable information regarding the nature and extent of the financial risk being assumed by Plaintiff; and making loans with out regard to the financial ability of the Plaintiff to repay, and with the full knowledge that Plaintiff WOULD NOT be able to repay the Mortgage Loan.

80.     Plaintiff has suffered, is suffering and will continue to suffer injuries and financial damages as a direct and proximate result of Defendants Deceptive Acts and Practices as alleged above.  Plaintiff is entitled under the Business and Professions Code Section 17200 to the equitable remedy of restitution (i.e., disgorgement) of all money, property or benefits wrongfully obtained by Defendants.

81.     Plaintiff's reasonable reliance on Defendants misrepresentations was a substantial factor in causing Plaintiffs damages.

**FOURTH CAUSE OF ACTON**
**VIOLATION OF UNITED STTATES CODE SECTION 1639, AND REGULATION Z, SECION 12 OF CODE OF FEDERAL REGULATIONS SECTION 226**

82.    Plaintiff re-alleges and fully incorporates by reference the allegations of Paragraphs 1 through 81 of this Third Amended Complaint as though fully set forth herein.

83.    Defendants Home 123 and New Century are creditors pursuant to 15 United States Code Section 1639 and Regulation Z and made the Mortgage Loan in violation of said statute and regulation, as follows;  The Mortgage loan is a high fee loan subject to a prepayment penalty; Defendants, and each of them, disregarded the ability of Plaintiff herein to repay the Mortgage Loan; as alleged herein Defendants failed to deliver to Plaintiff the required copies of the loan documents and denied Plaintiff her right to rescind the loan within the three-day right to rescind period; based on information and belief, Plaintiff was overcharged for closing costs and related fees, which Defendants, and each of them, failed to disclose to Plaintiff.

84.    The resulting mortgage loan violates HOEPA in that the total loan fees and points, if paid by Plaintiff as the current loan is written will greatly exceed 8 percent of the total loan amount.  Plaintiff contends this is why, unbeknownst to Plaintiff, the loan was extended to a 40 year mortgage.  Exhibit G shows where the good faith estimate was $352,858.20. The final loan amount was in excess of $495,000.

85.    Plaintiff further contends while the loan negotiated was not a high risk loan, Defendants actions in "creating" the resulting mortgage, created a high risk HOEPA violation instrument.  Defendant Chicoine's falsification of documents, and misrepresentations enabled this violation.

**FIFTH CAUSE OF ACTION**
**(Violation Of Welfare And Institutions Code Section 15600 et seq.)**

86.    Plaintiff re-alleges and fully incorporates by reference the allegations of Paragraphs 1 through 85 of this Third Amended Complaint as though fully set forth herein.

87.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, acting as a creditor pursuant to 15 United States Code Section 1691(e), discriminated against Plaintiff with respect to the credit transaction alleged herein, on the basis of race and sex

in that the terms and conditions of the Mortgage were not equal to and were less favorable than those offered by Defendants to borrowers of the same or no better qualifications but of a different race and sex.

## SIXTH CAUSE OF ACTION
### Real Estate and Settlement Procedures Act, 12 USC Section 2601 et seq. and Federal Reserve Regulation X, 24 CFR Section 3500, et seq.

88.   Plaintiff re-alleges and fully incorporates by reference the allegations of Paragraphs 1 through 81 of this Third Amended Complaint as though fully set forth herein.

89.   The Mortgage to Plaintiff by Defendants is a federally related mortgage loan as defined in the Real Estate Settlement Procedures Act (RESPA) and implemented by Regulation X.

90.   HUD's 2001-1 Policy Statement established a two part test for determining the legality of yield spread premiums to mortgage brokers under RESPA:  (1) whether goods or facilities are actually furnished or the services were actually performed for the compensation paid; and (2) whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.  Statement of Policy 200-1, 66.FR at 50352 and 50353-50355.

91.   The value of Defendants' actual services rendered in approving Plaintiff's loan is roughly zero because (1) Defendant Chicoine was not licensed as a real estate broker at the time of the loan duly licensed and registered with the California Department of Real Estate ("DRE"); (2) Defendants Home 123 and New Century Mortgage were not licensed and registered with the California DRE; the terms of the loan were misrepresented to Plaintiff so she incurred a higher interest rate, higher mortgage payments and the loan will incur a prepayment penalty if it is paid off within two years; (3) Defendant Chicoine, agent for Defendant Home 123 and Defendant New Century Mortgage informed Plaintiff that neither he nor any Defendant would "make any money" on the Mortgage, when in fact Defendants received a sum in excess of $10,000. Defendants receipt of this sum is not reasonable because it is an unearned fee under RESPA because it was not reasonably related to the performance of lawful services.

No Defendant is registered with the California DRE as such as the entire loan transaction was unlawful.

92.     Pursuant to 12 USC Section 2607(d) Plaintiff is entitled to recover from Defendants an amount equal to three times the amount of the "settlement services" involved (the yield spread premium, the processing fee, any broker fees) as well as actual damages, court costs, and any other amounts or damages permissible under RESPA.

93.     By the actions describe herein and as a proximate cause of Defendants' actions and each of them, Plaintiff was damaged in an amount to be proved at trial but not yet ascertained.

**SEVENTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

94.     Plaintiff re-alleges and fully incorporates by reference the allegations of Paragraphs 1 through 87 of this Third Amended Complaint as though fully set forth herein.

95.     A real estate agent or broker is required to exercise reasonable case and diligence in any transaction and is bound to exercise his or her skill for the benefit of the principal.  The agent is liable for any damages suffered by the principal as a result of any negligence in performance of his or her agency duties.

96.     Defendants owed Plaintiff a duty to act as reasonably prudent real estate brokers and agents.

97.     A reasonably prudent real estate broker or agent would not have arranged and granted plaintiff to obtain the loan referred to in this Third Amended Complaint. Plaintiff's credit scores were too low among other factors.

98.     Defendants acted negligently by improperly failing to consider, investigate or evaluate Plaintiff's financial condition including her prior loan with Defendant New Century Mortgage Company and comparing the Prior Loan to the Mortgage Loan Defendants arranged for Plaintiff and determining whether such loans would benefit Plaintiff.

99. Defendants knew or should have known to utilize the best practices in preparing the Mortgage and Defendants have negligently failed to do so. Defendant New Century Mortgage had Plaintiff's financial information and contacts as a result of the Prior Loan. Defendants Chicoine and Home 123 were made aware that Plaintiff had a Prior Loan with Defendant New Century.

100. Defendants acts and practices as described herein constitute unlawful, fraudulent and unfair business practices in that (1) Defendants' practices as described herein, violate each of the statutes set forth above, and/or (2) if there is any justification for Defendants' conduct it is grossly outweighed by the gravity of the consequences to Plaintiff; (3) Defendants' conduct is immoral, unethical, oppressive, unscrupulous, unconscionable and substantially injurious to Plaintiff. Such conduct violates Business and Professions Code Section 17200 et seq.

101. Plaintiff is informed and believes, and based thereon alleges, that Defendant Chicoine, is and was at all times relevant herein an individual who was an agent, broker and/or employee of Defendants Home 123 and New Century Mortgage. Plaintiff is further informed and believes and thereon alleges, that at all relevant times herein Defendant Chicoine engaged in the Deceptive Acts and Practices alleged herein as well as those acts and practices more particularly alleged below, while acting within the scope of his employment with Defendants Home 123 and New Century Mortgage.

102. Plaintiff relied upon such false promises, misrepresentations and concealments as alleged within this Third Amended Complaint. Plaintiff's reliance ultimately would cause plaintiff to lose her Primary Residence and equity do Defendants in foreseeable foreclosure proceedings.

103. Plaintiff relied upon such false promises, misrepresentations and concealments as alleged herein and as a result was induced to enter into the Mortgage loan transaction with Defendants. Had Plaintiff known the true facts she would not have entered into the Mortgage.

104.   On or before March 30, 2006, Defendant Chicoine, acting on behalf of Defendants Home 123 and New Century and purporting to act on behalf of Plaintiff after having gained Plaintiff's trust and confidence, but without Plaintiff's knowledge of the false contents prepared a "Uniform Residential Loan Application with false information, falsely reporting Plaintiff's income, falsely representing Plaintiff's current and combined housing expense information,  and falsely omitting Plaintiff had a substantial Auto Loan Debt (referring to the Mercedes SUV) among other things.

105.   Defendants should have known Plaintiff had not yet began her new job at the loan signing and Plaintiff could not sustain the Mortgage without this additional income.  Defendants should have known Plaintiff could not sustain the Mortgage AND the Auto Loan Payment, and regular living expenses on the salary Plaintiff earned at the time, reported to Defendants to be approximately $64,000 annually.

106.   Plaintiff is informed and believes ant thereon alleges that on or before March 30, 2006 Defendant Chicoine acting on behalf of Defendants Home 123 and New Century Mortgage intentionally and falsely misrepresented Plaintiff's income and other financial and credit profile information all as alleged above and in furtherance of the following illegal scheme:   1. to falsely qualify Plaintiff for a New Century Mortgage residential loan, which Plaintiff could not afford or repay; 2. to obtain a loan commission and other incentive compensation for themselves from the Mortgage; 3. to facilitate, assist, aid and abet New Century's attempt to steal Plaintiff's Primary Residence through foreclosure;  4. to  facilitate, assist, aid and abet Defendants Plaint to resell the Plaintiff's Primary Residence after foreclosure proceedings at its fair market value to repay the high interest rate of the Mortgage from the post-foreclosure sale proceeds, and to steal Plaintiff's equity from the post-foreclosure sale proceeds thus resulting in a windfall profit to Defendants.

107.   Defendants, and each of them, assumed the role of Plaintiff's agent and fiduciary in preparing the falsified Loan Application and supporting documents and forcing Plaintiff into the Mortgage.   Defendant Chicoine also acted as agent and

employee of Defendants Home 123 and New Century Defendant Chicoine acted as dual agents with divided loyalties in the Mortgage transaction.

108.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, in furtherance of their questionable acts negligently failed and refused to take any reasonable action to confirm or verify information provided by Defendant Chicoine and/or take any reasonable action to confirm or verify Plaintiff's credit scores, or other reasonably available documents, including but not limited to such records as tax returns, pay stubs, and the like, or taking any other reasonable action to confirm or verify the information contained in the Loan Application or documents supporting the Mortgage prepared and submitted by Defendant Chicoine.

109.   Plaintiff is informed and believes that on or about March 30, 2006, in furtherance of the illegal predatory lending scheme, Defendants Home 123 and New Century Mortgage approved the Mortgage.

110.   On or about March 30, 2006, and at all time relevant herein, Defendants and each of them fraudulently concealed from Plaintiff the subject predatory lending scheme,

111.   By their conduct as alleged herein, Defendants ratified the above alleged subject illegal predatory loan scheme and Deceptive Acts and Practices, and the actions of Defendants alleged above in furtherance thereof,

112.   On or about March 30, 2006, Defendants and each of them, deceived Plaintiff and obtained a signed promissory note, deed of trust and the Mortgage loan secured by the Primary Residence in favor of Defendants Home 123 and/or New Century Mortgage in the principal amount of approximately $459,000 with a 8.62% interest rate.   The Mortgage terms required Plaintiff to make monthly payments in excess of $4,054.00 per month commencing on or about May 1, 2006.

113.   Despite Plaintiff's repeated requests for rescission and revised loan documents prior to the loan closing, Defendants and each of them, at all times relevant herein, fraudulently concealed from Plaintiff the subject predatory lending scheme,

Defendants divided loyalties and conflict of interest in acting as dual agents in the Mortgage, and further fraudulently concealed from and failed to advise Plaintiff that she would lose title to the Primary Residence and the value of her accumulated equity in the Primary Residence should she accept the Mortgage and should she fail to make the first payment due May 1, 2006 she would lose all title to the Primary Residence.

114.   As a result of Plaintiff's foreseeable failure to pay the approximately monthly $4,054.00 on the Mortgage, Defendants declared the Mortgage in default and issued a Notice of Intent to Foreclose which went into effect on or about August 26, 2006.  At the time of the Notice of Intent to Foreclose, Plaintiff is informed and believes and thereon alleges the Property had a fair market value in excess of $500,000 and encumbrances against the property of an approximate value of the Mortgage $495,000.

115.   At the time Defendants, and each of them, solicited Plaintiff to refinance her existing mortgage loan on the Property with the Mortgage, and at the time Defendants, and each of them, sold the Mortgage to Plaintiff by way of the subject illegal predatory lending scheme, Plaintiff was a minority homeowner with a handicapped child, unable to access mainstream forms of credit.  In soliciting Plaintiff and selling the Mortgage to Plaintiff, as alleged herein, Defendants, and each of them, knowing and with malicious intent, made a loan to Plaintiff that they knew she could not afford or repay with the intention of depriving Plaintiff of the Primary Residence, and the value of Plaintiff's accumulated equity in the property.

116.   Plaintiff is informed and believes and thereon alleges the Defendants market and sells high interest rate loan products, designed to hide the true costs and disadvantages of the high rate credit, and targets vulnerable homeowner, like Plaintiff using predatory lending practices as alleged herein.  As a predatory lender, Defendants seeks to protect itself from the potential financial risk involved in making such mortgage loans by selling such loans to those vulnerable homeowners with home equity in an amount known to be sufficient to repay the mortgage loan principal plus the high interest arrearages from the proceeds of the foreseeable foreclosure sale.    As a predatory

home mortgage lender, Defendants then seeks to resell the homeowner's property after foreclosure at fair market value, repaying the loan and arrearages and keeping the equity above the loan debt, thus resulting in a windfall profit to Defendants.

117.   As a direct result and proximate result of Defendants predatory loan practices targeting Plaintiff as alleged above, Plaintiff stands to lose title to the Property and in excess of $150,000 in home equity that she had accumulated since on or about 1996.

118.   On June 16, 2006 Plaintiff made the first payment after being advised for the first time by representatives of New Century Mortgage that if the first payment was not made, the Primary Residence would go immediately into foreclosure, this procedure was applicable only for the first payment.  Plaintiff depleted all her then bank accounts to make this payment.

119.   On or about March 30, 2006, and at all times relevant herein, Defendants, by making false promises.

120.   As a direct result of Defendants misconduct and each of them, Plaintiff has suffered and continued to suffer unnecessary mental stress, anguish and professional ruin from the possibility of becoming homeless with her handicapped son. This stress has resulted in the loss of income, the destruction of a long term banking relationship, the voluntary surrender of the Mercedes SUV – creating a blemish on Plaintiff's credit, the loss of financial security and reasonable equity in her own home. Plaintiff has suffered additional financial hardship, temporary inability to secure permanent employment and loss of medical benefits.  Plaintiff has suffered undue mental anguish at the hands of Defendants resulting and inhibiting proper care for her handicapped son.

### NINTH CAUSE OF ACTION
### (Rescissory Damages And Restitution)

121.   Plaintiff re-alleges and fully incorporates by reference the allegations of Paragraphs 1 through 116 of this Third Amended Complaint as though fully set forth herein.

122.    Plaintiff's consent to the Mortgage Loan was obtained by Defendants, and each of the, through mistake, fraud, and undue influence.

123.    Defendants, and each of them, with malicious intent to deceive Plaintiff and to unduly influence her to consent to the Mortgage Loan with Defendants knew, or should have known, Plaintiff did not have sufficient income to afford or pay.  Defendants, and each of them did fraudulently conceal from Plaintiff that by accepting the Mortgage Loan, Plaintiff was thereby placing her sole most valuable possession, the Primary Residence, at severe risk of loss.

124.    The misrepresentations of Defendants, and Defendants' Deceptive Acts and Practices and as a proximate result of the aforementioned acts, Plaintiff is entitled to the issuance of an injunction against Defendants, and each of them, prohibiting each of said Defendants from predatory loan practices of the nature and kind herein alleged.

125.    As a further direct and proximate result of the wrongful conduct of Defendants, and each of them, as alleged herein, Plaintiff is entitled to restitutionary damages and a disgorgement of the wrongful commission and windfall profits of Defendants and each of them.

## **PRAYER**

**WHEREFORE,** Plaintiff prays that this Court grant judgment against Defendants, as authorized by Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b), Section 108(c) of TILA, 15 U.S.C. § 1607(c), and pursuant to its own inherent equitable powers as follows:

(1) Enter judgment against Defendants and in favor of Plaintiff for each violation charged in this Third Amended Complaint;

(2)    That this Court assume supplemental jurisdiction of all State Claims, pursuant to 28 U.S.C. Section 1367;

(3)    That this Court declares that Defendants violated applicable provisions of federal and state law;

(4)    That this Court grants Plaintiff restitution and disgorgement of all amounts wrongfully acquired by Defendants;

THIRD AMENDED COMPLAINT

1

(5)     For a permanent injunction, enjoining Defendants from engaging in the

2     Deceptive Acts and Practices of the nature and kind alleged and not alleged herein;

3

(6)     As to the Fourth Cause of Action:   For statutory damages of $2,000 per

4     occurrence;

5

(7)     For punitive damages in an amount in excess of Seventy-One Thousand dollars

6     ($71,000);

7

(8)     For an Order Rescinding the Notice of Intent to Foreclose;

8

(9)     For and Order Restoring Title, Note, Deed of Trust and Lien

9

(10)    For Dismissal of this Case WITH Prejudice (Fed.Rule.Civ.Proc. 41(a)(2)

10

(11)    For interest on damages awarded at the legal rate; and

11

(12)    That this Court award Plaintiff any and all such other and further relief as this

12     Court considers just and proper.

13

Dated: May 1, 2007

14

15

//s/
_____

16

Leslie Barnes Marks
In Pro Se

17

18

19

20

21

22

23

24

25

26

27

28

-32-

THIRD AMENDED COMPLAINT